## BRUBAKER *against* ROBINSON.

### IN ERROR.

Penrose
and Watts,
3pw 295
201 474

In a case where it was a question of fact, whether the defendant had purchased a tract of land, (which he afterwards sold at an advance, of which the plaintiff claimed a part as a partner,) in partnership with the plaintiff, or whether he bought upon an agreement that the advance upon a resale should be applied to pay a specific debt, it is relevant and competent for the defendant to prove that it was so applied, as it goes to support his defence in part.

Where there is a purchase by individuals of a tract of land, and a sale of it again for their mutual benefit, assumpsit by one of them may be sustained to recover his share of the price. *Dubitatur* if such transaction constitutes a technical partnership: If it did, as it related only to a single item, and the equal division of the gain thereby made, and does not require that auditors should settle an account, the action of account render is not essential, but assumpsit may be maintained.

ERROR to the District Conrt for the city and county of *Lancaster.*

The statement of the case contained in the opinion of the court makes it unncessary to give any other. It was argued by

*Champneys* for the plaintiff in error,

*Porter contra.*

The opinion of the court was delivered by

KENNEDY, J.—This was an action of assumpsit brought by the plaintiff in error against the defendant in the District Court of Lancaster, to recover the one equal fourth part of eight hundred and fifty dollars.

It appeared from the evidence given on the trial of this cause in the court below, that a certain *Adam Zell,* had been the owner of a farm and mill in *Lancaster* county, and was indebted to the estate of *Jacob Clemence,* deceased, in the sum of nine hundred dollars. That a certain *James Ralson* was the guardian of two minor children of *Jacob Clemence,* and that *Zell* wanted *Ralston* as the guardian of these children, to whom the nine hundred dollars was coming, to accept of his bond for the payment of it at a future day. *Ralston* agreed to do so, if he would give his bond with security, which was done by *William Robinson* becoming bound in a bond with *Zell* as his security to *Ralston,* for the payment of the nine hundred dollars with interest. Afterwards on the fourth of February, eighteen hundred and twenty, *Adam Zell* assigned all his property to *John Robinson,* the defendant, *William Robinson,* the security, *Joseph Weaver,* and *Abraham Brubaker,* the plaintiff, in trust for the payment of his debts. In the September following, the farm and mill of *Zell* which had been taken in execution by the Sheriff as the property of *Zell,* were sold under a writ of *venditioni exponas* to *John Robinson,* the defendant for forty-

five hundred dollars, who on the thirtieth of the same month, sold the same property to *John Miller* for fifty three hundred and fifty dollars; eight hundred and fifty dollars more than he bid for it at the Sheriff's sale. This sum was paid by *John Miller* to *John Robinson,* who paid the Sheriff the amount of his bid, and gave to *Miller* a bond guaranteeing the title to the property. The plaintiff in this case claimed that the defendant purchased the farm and mill at the sale by the Sheriff, under an agreement previously entered into between him the defendant, *John Zell* and *Joseph Weaver* that the defendant should attend the sale, which was about to be made by the Sheriff, and buy the property in his own name for the joint benefit of the four, and make sale of it again at the highest price that could be obtained for it, and divide the advance, whatever it might be, equally between them. That the defendant by his sale of the property to *John Miller* had gained an advance of eight hundred and fifty dollars, the one fourth of which according to the agreement between them, he was bound to pay to the plaintiff.

The defendant denied having made such agreement, and gave evidence of the declarations of the plaintiff that the profits of the sale to *Miller* were to be applied towards paying the debt of *James Ralston* guardian of the two minor children of *Jacob* `Clemence,` for which *William Robinson,* was bound as a surety for *Adam Zell,* and that he, the defendant, and *William Robinson* had paid to *James Ralston* eight hundred and twenty dollars and ninety-two cents, in part discharge of the bond of *Zell* and *William Robinson,* upon which there was still a balance due of upwards of three hundred and sixty dollars. The evidence of the payment of this money to *Ralston,* was the deposition of *Ralston,* which was objected to by the counsel for the plaintiff, because as he alleged the matter of it was irrelevant and therefore inadmissible. The court overruled the objection and admitted the testimony. The opinion of the court in this behalf was excepted to by the plaintiff, and the court signed a bill of exception, which is made the foundation of the first error assigned here by the plaintiff. There was certainly no error in the court below admitting the deposition of *James Ralston.* Because if the Jury believed the evidence which was given on the part of the defendant, that the plaintiff had agreed that the advance or profits on the sale of the farm and mill to *Miller,* should be paid to *Ralston* towards liquidating the bond of *Adam Zell,* and *William Robinson,* and again that it had been so appropriated by the defendant it would most clearly have been a good defence against the plaintiff's claim in this suit, and it must be admitted; I think, that the deposition of *Ralston* went directly to support this defence in part, and was therefore admissible.

The next error, which is the only remaining one, *is that* the court charged the Jury that the plaintiff could not sustain his ac--

(Brubaker *v.* Robinson.)

tion because it was in assumpsit, and founded upon a partnership transaction between the parties without any previous settlement of the partnership accounts having been made, and balance thereupon found, to be due by the defendant to the plaintiff.

In this part of the charge of the Court below, to the Jury, I think there was error. For admitting that a technical partnership existed of the correctness of which I very much doubt, there was but a single item to be settled, the partnership, if such it may be called, being at an end. The whole scope of the agreement contemplated only the purchase of a single item of property, and the sale of it again, and an equal division of the gain thereby made between them. It cannot be pretended that there is any necessity for the intervention of auditors to state and settle an account when the whole matter consists merely of the purchase of a single tract of land, and the sale of it again: and the question to be answered is how much, if any thing has been gained, by the purchase, and re-sale, after deducting the expenses attending it? This can be ascertained with as much facility, and certainty, by a Jury, as by Auditors, and the verdict of the Jury at once closes, and puts an end to all further controversy. Where the transaction is of such a nature as to render the calling in of auditors altogether unnecessary the action of account render may very well be avoided; for the prosecution of such an action is not only attended with more than double the costs and expenses but more than double the delay of assumpsit. This principle was adopted by the Supreme Court of New-York in *Musier* v. *Trumpbour*, 5. *Wendell's Rep.* 274. Where the plaintiff and defendant agreed to burn lime on the share, one was to fill the kiln with stone, and the other to burn it, and furnish the necessary wood for that purpose, the lime to be equally divided between them; and although it was held that this created a technical partnership, yet that an action at law in *assumpsit* might be maintained by the one against the other for a balance due him, and growing out of the partnership transaction, in as much as there was but a single item to liquidate. The Judgment of the Court below is reversed for this second error assigned, and a *venire de novo* awarded, that the plaintiff may proceed to another trial in the court below, if he should think himself able to encounter successfully the evidence which the defendant gave on the former, and will no doubt again give on the next trial, of what I consider will be a good defence against the plaintiff's claim if established to the satisfaction of the Jury.

Judgment reversed and a *venire de novo* awarded.