MARSH (MOLYNEAUX v.).   See Case No. 9,703.

MARSH (MURRAY v.).   See Case No. 9,965.

## Case No. 9,118.

MARSH v. N. W. NAT. INS. CO.

[3 Biss. 351.] [1]

District Court, E. D. Wisconsin.   Oct. Term, 1872.

INSURANCE — POLICY CANCELLED BY MISTAKE — PREMIUM NOT PAID — MUTUAL ACCOUNTS — PARTNERSHIP.

1. An insurance company is liable to the legal holder of a policy, though the person who procured it had, by mistake, ordered it cancelled.

2. The fact that the premium had not been actually paid is no defense against a bona fide holder   Mutual accounts have, in such case, the effect of payment.

3. A man who buys and ships for a firm in another city, whose funds are used, the profits or loss to be divided, and each shipment to be a distinct venture, is not a partner, and the firm can sustain a libel on a policy indorsed to them, without prejudice from his orders or mistakes.

This was a libel in personam on a policy of insurance.

The libellants, Marsh & Sternberg, partners in trade in the city of Buffalo, made an agreement with William B. Hibbard, of Milwaukee, to purchase wheat for them at Milwaukee and ship it to Buffalo, libellants to pay for each cargo, and if there should be a profit on a cargo Hibbard was to have half the profit, and if there were a loss on a cargo he was to pay half the loss. Libellants were to transact the business in Buffalo, and Hibbard in Milwaukee. Under this arrangement Hibbard, with three persons associated with him, purchased and shipped several cargoes, each purchase and shipment being a distinct venture.

Wheat was purchased by Hibbard and his associates with funds advanced by the Wisconsin Marine and Fire Insurance Company Bank, of which David Ferguson was cashier, and shipped on board the schooner Excelsior, in the name of D. Ferguson as shipper, for Marsh & Sternberg, Buffalo. A certificate of insurance was issued by the respondent on the 7th day of October, 1871, to William B. Hibbard, for the amount of $7,500, "loss, if any, to be paid to D. Ferguson, cashier, or order hereon, on return of this certificate." Hibbard and his associates were agents of Eastern insurance companies, and, as such agents, issued certificates of insurance on the same cargo. October 9th Hibbard forwarded to libellants a statement of the purchase of the wheat, of the shipment, of the expenses of shipping and of insuring, and on the same day he gave Ferguson his draft, in favor of Ferguson, with the bill of lading and certificates of insurance. Ferguson indorsed the draft, bill of lading and certificate of insurance, and forwarded them to Buffalo, where Marsh & Sternberg honored the draft on the 12th of October, and received the bill of lading and certificate of insurance. October 11th Marsh & Sternberg sent to Hibbard a tele-

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

graph dispatch: "Security, Western, City Marine, probably all used up. Have cancelled policies on Athenium, Excelsior, Clayton Belle, renewed in New York, where we insured. Monterey will get it here if not in good companies." Hibbard, mistaking the purport of this dispatch, gave notice in the office of respondent on the 12th October that their policy on the cargo of the Excelsior was cancelled. The vessel foundered on Lake Huron on the 15th October, and the cargo became a total loss. Hibbard and the officers of the respondent considered the risk cancelled. When Hibbard gave notice of the cancellation the officers of the respondent demanded return of the certificate and the adjustment of a portion of the premium. October 11th Marsh & Sternberg wrote to Hibbard stating: "We have secured insurance in New York in place of Security, Buffalo Fire and Marine, and Buffalo City, for fear they might not be able to pay loss, should any occur." These are the companies of which Hibbard and his associates were the agents. Notice was given to the respondent of the mistake forty-eight hours after the loss. October 21st Marsh & Sternberg wrote to Hibbard repudiating his notice of cancellation, as done without their knowledge or authority. The certificate of insurance had not been returned to the respondent, and Marsh & Sternberg hold it and bring this libel to recover the amount of the insurance.

Proof of loss was given to respondent. Libellants never cancelled this risk, nor authorized any person to do so. They paid the draft on the faith of the bill of lading and the certificate of insurance.

The answer alleges that these libellants were partners in this business with W. B. Hibbard and his associates; that the risk was cancelled, and that the premium had not been paid.

Hibbard and his associates, as insurance agents, and the respondent did a mutual credit business, and at the end of every month they liquidated their respective accounts. The premium in this case had not been adjusted or paid, nor any attempt made to collect it; nor had the risk been cancelled on Hibbard's books. An entry of cancellation was made on the books of respondent.

The cargo of the schooner Excelsior, as well as those of the vessels previously purchased and shipped, was purchased in pursuance of the agreement for dividing profits and losses. This constituted the libellants, Marsh & Sternberg and Hibbard and his associates, partners in the transaction, and clothed each of the partners with all the powers of a partner over the business and property of the joint venture. Colly. Partn. p. 13, § 16; Story, Partn. §§ 2, 19, 21, 27; Smith, Merc. Law, 39. That a partner has power to transact the whole business of the firm. whatever that may be, and consequently to bind his partners in such transaction as entirely as himself, is a general principle relating to partnership transactions long since settled, and now no longer open to question. Marshall, C. J., in Winship v. Bank of U. S., 5 Pet. [30 U. S.] 552, 561; Smith, Merc. Law, 66, 72, 73; Will. Eq. Jur. 190, 191. Each partner is the agent of the other, and can make any lawful contract in relation to the business of the firm. Reid v. McNaughton, 15 Barb. 177; Tapley v. Butterfield, 1 Metc. [Mass.] 515; Locke v. Stearns, Id. 560.

When Hibbard purchased the wheat it was the property of all the parties interested. When he borrowed the money to pay for it, and pledged the wheat as security, it still remained the property of the parties jointly interested, subject to the lien upon it as security for the payment of the money loaned, and when that money was paid by Marsh & Sternberg it was paid for the partners, who still owned the wheat subject to a proper accounting as between themselves.

The policy of insurance was effected for joint benefit. It is of no consequence that it was in Hibbard's own name. The court would compel its application for the benefit of those interested. The policy was cancelled by mutual agreement in good faith on both sides, and after the premiums had been partially earned, and before a loss had occurred, and both parties were bound by it.

It is claimed that Hibbard only acted as the agent of the libellants in relation to the cancellation of the policy, and exceeded his instructions in that regard; still his act was binding on the libellants. An agent acting within the general scope of his authority binds his principal, notwithstanding he may have departed from his instructions, provided the party with whom he contracts had no knowledge of the instructions. Fland. Ins. 157; Perkins v. Washington Ins. Co., 4 Cow. 645; New York Cent. Ins. Co. v. National Protection Ins. Co., 20 Barb. 468; Lightbody v. North American Ins. Co., 23 Wend. 18.

Hibbard was then agent for transacting the general business of purchasing, shipping and insuring here. If he misunderstood the purport of the telegram of the 11th October, and in cancelling the insurance in question acted according to his then understanding of it, but in excess of his instructions, under the authorities cited above the libellants are bound by his act. Even if he stood in the position of an agent, the loss should fall upon his principals, and not upon the insurance company, the officers of which had no knowledge of what his instructions were. The telegram was not sent to the insurance office at the time of the order to cancel. It was never seen by any officer of the company until after the loss.

There is nothing in the claim of the libellants that they are assignees of the insurance to take this case out of the general rule. They are a part of the original parties to the transaction, and when they paid the draft drawn by Hibbard the transaction was remitted to precisely the position it would have

occupied if they had forwarded the money to Hibbard before the purchase and there had been no transfer of the insurance. Besides, no notice was given to the insurance company of the assignment of the certificate of insurance to the libellants, and the doctrine stated in 2 Duer, Ins. 51, 52, note, and Id. 59, 60, has no application to the case under consideration.

The libellants were not assignees of the insurance for their sole benefit. They were assignees, if at all, for the parties jointly interested—for the partners.

Emmons & Hamilton, for libellants.
Palmer, Hooker & Pitkin, for respondent.

MILLER, District Judge. Under the agreement between Marsh & Sternberg, the libellants, and William B. Hibbard, he purchased several cargoes of wheat in Milwaukee, and shipped them for Marsh & Sternberg to Buffalo. This business continued through a portion of the season of 1871. The associates of Hibbard were not known to or recognized by Marsh & Sternberg as partners. Hibbard associated these persons with him on his own account, without regard to Marsh & Sternberg. These persons were in no sense the partners of Marsh & Sternberg, nor do they in any manner change the original relations between the parties. Hibbard may have an account to settle with his associates, but Marsh & Sternberg have no connection with them, as partners or otherwise.

The purchase and shipment of each cargo was a distinct and separate venture. By the arrangement the parties mutually granted to each other a legal remedy. Hibbard acquired a legal right to prosecute an action at law against Marsh & Sternberg for his share of the profits on the respective cargoes, and they had a right of action against him for their share of each loss. Hibbard did not acquire an interest as a partner with Marsh & Sternberg in any of the cargoes. A bill in equity would not lie between these parties for an account of profit and loss, as each party had a complete remedy at law, and Hibbard had no share or interest in the wheat. His interest in the business was provided for by way of compensation, and nothing more. Independently of the agreement, one venture or transaction would not make the parties technical partners, requiring a bill in equity for adjusting their accounts. Musier v. Trumpbour, 5 Wend. 274; Brubaker v. Robinson, 3 Pen. & W. 295; Gillis v. McKinney, 6 Watts & S. 78; Coles v. Coles, 15 Johns. 159; Brigham v. Eveleth, 9 Mass. 538; Galbreath v. Moore, 2 Watts, 86; Borrell's Adm'r v. Borrell, 9 Casey [33 Pa. St.] 492; Van Amringe v. Ellmaker, 4 Barr [4 Pa. St. 281.

There are decisions to the contrary, but courts are inclined to relieve parties of the complication of proceedings in equity in this

respect as far as possible. But speculation is unnecessary, as the agreement between the parties fixes their respective rights. The objection in the answer in regard to the alleged partnership raises a question of remedy and not of right; and in this case there cannot be necessity of a settlement between the libellants and Hibbard for either profit or loss, as the cargo became a total loss by the vessel foundering before reaching her port of destination.

The dispatch of Marsh & Sternberg to Hibbard, on which he ordered the risk cancelled, was dated October 11th. On that day Ferguson, in trust for the bank, held the legal title to the cargo and the beneficial interest under the insurance. On that day no person could control the insurance but himself, and neither Marsh & Sternberg nor Hibbard, nor the respondent could disturb his interest in the insurance without his consent. Any act of theirs jointly or severally in this regard, would be void as to him.

On the morning of the 12th October Marsh & Sternberg, having honored the draft, became the legal owners of the cargo by indorsement of Ferguson of the bill of lading, and the assignees of the certificate of insurance, entitled to be paid the loss, if any, on return of the certificate. They acquired the same rights as Ferguson in the insurance. The right of Ferguson or his assigns to the loss became vested in Marsh & Sternberg, who have the same power as he had to maintain this libel.

William B. Hibbard had no authority from any source to cancel, or give notice of cancellation, of the policy of insurance while it was in the hands of a bona fide holder entitled to the payment of the loss, if any. At the time he gave the notice to respondent the certificate of insurance had passed to Marsh & Sternberg. He gave the notice without their knowledge or consent; and for this reason the cancellation, if made, was void as to Marsh & Sternberg, and it was also void as to them on the ground of mistake on the part of Hibbard. It cannot be claimed that this mistake prejudiced the respondent, as the loss was total, and the company could not have prevented it. If the loss had been partial, possibly the company might, by the notice of cancellation, have been induced not to investigate the loss. By the terms of the insurance contract, in case of loss, the money was payable to Ferguson or order on return of the certificate. The company demanded the certificate, which was not returned, but was in the hands of Marsh & Sternberg. It also demanded a portion of the premium, which was not adjusted nor paid. A mere memorandum of cancellation was made on the books. It is questionable whether the liability of the company did not continue, even in the absence of the mistake, until the certificate was returned and cancelled and the rate of premium fixed.

To hold the contract of insurance rescinded

under these circumstances would sanction a very loose manner of business where the utmost strictness is called for. At all events the error of Hibbard was corrected by notice to the company, and the original rights and liabilities of the parties were not disturbed or changed. The company has not been released from its obligation to pay the amount of the insurance.

The objection that the premium had not been paid cannot avail the respondent. The company and Hibbard's insurance agency mutually credited each other, and at the end of every month they struck a balance of their accounts. This was a payment in effect; and at all events the certificate that W. B. Hibbard is insured implies a receipt of the premium, which is binding in the hands of third persons and innocent holders of the certificate. The legal presumption was that the premium had been paid.

Decree for libellants.

NOTE. That the fact that the premium had not been actually paid is not a good defense to an action on the policy. consult Trustees of First Baptist Church v. Brooklyn Fire Ins. Co., 28 N. Y. 153; Post v. Aetna Ins. Co., 43 Barb. 351; Boehen v. Williamsburgh Ins. Co., 35 N. Y. 131; Pino v. Merchants' Mut. Ins. Co., 19 La. Ann. 214; De Gaminde v. Pigou, 4 Taunt. 246.

The cancellation of a policy must be the act of the principals; a broker or agent, even though the policy may have been left in his hands. has no right to demand or consent to the cancellation. Xenos v. Wickham, 33 Law J. C. P. 13.