THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. J. H. HUCKLEBRIDGE.

No. 11,711. (64 Pac. 58.)

1. PARTNERSHIP — *Contract Construed.* An agreement between two persons, one to furnish money to purchase and ship cattle, the other to perform the labor of buying and shipping them, upon sale the profits to be shared and the losses to be borne equally, constitutes them partners as to one who has inflicted loss upon them by injuring the cattle, and a suit for damages for the injury must be brought in the name of both.

2. PRACTICE, DISTRICT COURT—*Defect of Parties Plaintiff.* The civil code, section 91 (Gen. Stat. 1897, ch. 95, § 91; Gen. Stat. 1899, § 4341), which requires defects in petitions other than those which appear on their face, and other than those of jurisdiction and in statements of fact, to be set up by answer, does not apply to a petition by a partner who conceals the fact of partnership and wrongfully brings suit in his own name for an injury to the partnership property. In such case the defendant, if ignorant of the partnership until disclosed upon the trial, may then raise the objection without amendment of his answer.

3. DISEASED CATTLE—*Insufficient Defense.* That cattle were brought into this state without complying with the regulations of the state live-stock sanitary commission constitutes no defense to an action for injuries to them by communicating disease to them after they arrived.

Error from Greenwood district court; C. W. SHINN, judge. Opinion filed March 9, 1901. *In banc.* Reversed.

*A. A. Hurd, W. Littlefield,* and *O. J. Wood,* for plaintiff in error.

*J. B. Clogston,* and *Lew. E. Clogston,* for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J.: This was an action brought by J. H. Hucklebridge against the Atchison, Topeka & Santa Fe Railway Company to recover damages for

causing the former's cattle to become infected with Texas fever while under shipment in the latter's cars on its line of railway. A verdict and judgment were rendered for the plaintiff, to reverse which error has been prosecuted to this court. It is earnestly contended by counsel for the railway company that the evidence was insufficient to justify the verdict and judgment; that, inasmuch as there was no direct evidence of the cattle's becoming infested with fever ticks producing the fever disease while confined in the railway-cars, plaintiff's case, therefore, rested wholly upon a presumption—a presumption founded upon the fact that soon after they were unloaded and put on pasture the disease began to manifest itself. Counsel say that this presumption, if it existed at all, was insufficient; and furthermore, that, if it existed at all, it was negatived and overcome by a contrary presumption arising out of the fact, as testified to by witnesses, that the cars in which the cattle were shipped had not been recently in quarantined or tick-infested portions of the country, and that such cars had been recently cleansed of possible fever ticks by approved and effective processes of disinfection and tick extermination. We have carefully examined all of the evidence in the case and are unanimously of the opinion that it was sufficient to entitle the jury to consider the disputed question of fact and to support the verdict rendered. The evidence was prolix in its details and the case anomalous in character, and no benefit to the litigating parties or to the litigating public would be subserved by setting out the claimed facts or discussing the various legal propositions arising thereon.

The cattle were purchased for the defendant in error, the plaintiff below, by one E. H. Nichols, under an agreement between the two that the plaintiff should

1. Partners by contract.

furnish the money and Nichols should give his time and attention to the purchasing and shipping of the cattle, and that upon their sale the profit and loss of the venture should be divided equally between them, including the loss, if any, that might be sustained by Texas fever. Mr. Nichols testified as follows :

"Ques. You bought the cattle? Ans. Yes, sir.

"Q. You have an interest in this suit, haven't you? A. No, sir.

"Q. That is, you are a part owner in these cattle? A. No, sir; except as to the sale of the cattle.

"Q. How do you explain that? What do you mean by it? A. That is, I was to be governed in buying those cattle as to the sale of the cattle whether I had any commission in the cattle or not. I bought them for Mr. Hucklebridge.

"Q. You are to have a certain per cent. in the profit of the cattle? A. Yes, sir, and the losses.

"Q. Mr. Nichols, I understand you bought these cattle for Mr. Hucklebridge? A. Yes, sir.

"Q. And they belonged to him? A. Yes, sir.

"Q. You had a contract with Mr. Hucklebridge about your pay? A. Yes, sir.

"Q. Your commission or whatever you call it? A. Yes, sir.

"Q. And that was to be based on the profits of the cattle? A. Yes, sir, or losses."

Mr. Hucklebridge testified as follows :

"Ques. Who bought these cattle? Ans. Mr. Nichols.

"Q. State what arrangement there was between you and Mr. Nichols about the purchase of these cattle. A. Mr. Nichols was to go out in the country and buy a bunch of cattle. I was to pay for them, ship them in here, and sell them. If there was a profit we would divide ; if there was a loss we would each stand his part.

"Q. Were a part of these cattle put into his pasture?

Mr. Nichols has a pasture here. Was he to furnish a pasture, or you, or how was that done? A. I was to pay all expenses until the cattle were sold.

"Q. And did he contribute any pasturage? A. No, sir; only by his charging me with it.

"Q. The cattle were put in his pasture and he charged you with a certain amount for pasturage? A. Yes, sir."

Upon the facts disclosed by this testimony, the question arises whether Hucklebridge and Nichols were partners in the cattle in such way as to make the latter a necessary party to a suit for the recovery of injuries committed to them. In the case of *Shepard v. Pratt*, 16 Kan. 209, it was held:

"Where a party without any interest in the property is, by agreement, to receive as compensation for his services, and only as compensation therefor, a certain proportion of the profits, and is neither held out to the world as a partner, nor through the negligence of the owner permitted to hold himself out as a partner, he is not a partner, either as to the owner or third parties."

However, it will be observed in that case that the partnership extended no further than to the profits of the venture. There was no agreement to share the losses, if any should be sustained. In this case the determination of the question of partnership involves the consideration of an additional factor—an agreement to bear losses. This, in our judgment, carries to a different conclusion than the one reached in the case of *Shepard v. Pratt*, supra. The text of Lindley on Partnerships, pages 10, 11, is quite emphatic to the point that a relationship such as the one before us is a partnership.

"Whether an agreement creates a partnership or not depends on the real intention of the parties to it. If the agreement is not in writing the intention of the

parties must be ascertained from their words and conduct. If the agreement is in writing its true construction must be determined; but, as will be more fully shown in a subsequent chapter, even a written contract may be departed from and modified by a new verbal agreement between all the partners proved by conduct inconsistent with the written document. But an agreement to share profits and losses may be said to be the type of a partnership contract. Whatever difference of opinion there may be as to other matters, persons engaged in any trade, business or adventure upon the terms of sharing the profits and losses arising therefrom are necessarily to some extent partners in that trade, business, or adventure; nor is the writer aware of any case in which persons who have agreed to share profits *and* losses have been held not to be partners. But it does not follow that each of several persons who share profits and losses has all the rights which partners usually have. For example, a person may share profits and losses and yet have no right actively to interfere with the management of the business; or he may have no such right to dissolve as an ordinary partner has; or he may have no right to share the good-will of the business on a dissolution; and other instances of restricted rights may be suggested. What in any given case the rights of a particular partner are depends on the agreement into which he has entered; but unless the word 'partner' is to be deprived of all definite meaning its proper application to persons who share profits and losses can hardly be questioned.''

In 17 American and English Encyclopedia of Law, 1st ed., p. 838, it is said :

''So, labor, as viewed from a partnership standpoint, being capital, where one person contributes money or property and another his personal services to the capital stock, there being a community of interest in the profits and losses, it is likewise a partnership, though in such case the party contributing services acquires no interest in any of the partnership

capital that is not converted into profits, and in order to constitute the partnership in such case community of losses as well as profits is essential.''

It would thus seem that Hucklebridge and Nichols were partners in the cattle venture. The thing for which suit was brought was the very thing for which Nichols was liable to Hucklebridge—losses on the cattle. He was therefore a partner in that sense which required his joinder in the suit. It is no answer to say that Nichols, knowing that Hucklebridge was prosecuting a suit in his own name for the recovery of their losses, permitted him to do so and aided him in doing so by testifying as a witness in his behalf. Such considerations might furnish grounds for an equitable estoppel should Nichols thereafter bring suit against the railway company to recover for the same injuries, but the railway company is entitled to more than an estoppel *in pais* against Nichols. It is entitled to an estoppel of record. It is entitled to that estoppel which would result from his joinder in the suit, and the recovery of a judgment in his name or his defeat in attempting to recover it. Our conclusion, therefore, is that Nichols, being jointly interested with Hucklebridge in the very subject-matter of the suit, to wit, the losses incurred in the cattle venture, was a partner with him, and therefore a necessary party to the recovery of the partnership *res*.

I am unable to concur in the above. I do not believe the relationship between Nichols and Hucklebridge constituted them partners. I think their relations were those of employer and employee. Nichols's share in the residuum of the proceeds of the sale of the cattle after payment of losses would go to him as compensation for services and not as partnership profits. In the event of no profits there would be no

compensation. It is true that in the event of losses in excess of profits there would be a liability to Hucklebridge on the part of Nichols, but that liability would grow out of an express contract, not out of a mutual relation. I think that when a right to the profits or a liability for the losses of a venture between two or more persons exists by virtue of an express contract to that effect, and does not exist in the relations of the parties, the right and liability both exist *qua* debt and not by virtue of a partnership. To that effect is the opinion of the high court of justice of Ontario, in what seems to me a well-considered case—*Merchants' Bank v. Thompson*, 3 Ont. 541–565. To the same effect, although not expressed in the same terms, is another case quite similar to the one under consideration—*Marsh v. Northwestern National Ins. Co.* 3 Biss. 351, Fed. Cas. No. 9118.

It would appear from the record that the fact of Nichols's partnership relation was not known to the plaintiff in error, the defendant below, until it was disclosed at the trial on his cross-examination. No objection on the ground of a defect of parties plaintiff was then made. It was first made upon demurrer to plaintiff's evidence. It was afterward raised upon requests for instructions. A majority of the court are of the opinion that it was properly raised by the defendant, and that the adverse rulings of the court upon the demurrer to the evidence and the proffered instruction are sufficient grounds upon which to predicate the claim of error. It is true that the civil code, section 91 (Gen. Stat. 1897, ch. 95, § 91; Gen. Stat. 1899, § 4341), declares that if the objections to a petition do not appear upon its face they must be made by answer, and if not made in that way will be deemed waived, excepting objections

<span style="font-size:smaller">2. Defect of parties plaintiff.</span>

Railway Co. v. Hucklebridge.

to the jurisdiction of the court and the sufficiency of
the facts stated to constitute a cause of action, but
that provision applies to defects in the petition known
to the defendant in time to plead them before the
making up of the issues in the case, and not to de-
fects concealed by the plaintiff and discovered on the
trial by the defendant.   In the latter instance there
is no opportunity to plead the discovered defect except
by way of amendment, to be allowed on the trial, in the .
discretion of the court.  The plaintiff, having con-
cealed the real fact and thus misled his adversary,
cannot object that the defendant's answer lacks a dis-
closure of the facts which he himself should have
been the first to plead.  He will be deemed to have
waived the formal pleading of that by the defendant
which he himself should have been the first to dis-
close, and he cannot object that the defendant takes
the only available means to protect himself against the
false petition.

I do not concur in the above and I am authorized
by Mr. Justice ELLIS to say that he does not concur
in it.   The decision of the majority interpolates into
the section of the code quoted an exception or proviso
which has no existence either in its language or its
implications.   The code says that defects not appear-
ing on the face of petitions must be taken advantage
of by answer; otherwise, they will be deemed waived;
and it elsewhere makes provision for taking advan-
tage of such defects as do not appear upon the face of
the petition and were not known to exist until dis-
closed upon the trial.   The civil code, section 139
(Gen. Stat. 1897, ch. 95, § 139; Gen. Stat. 1899,
§ 4389), authorizes the making of amendments to con-
form pleadings to the facts proved upon the trial, and
it is not the law in all cases that the allowance of

such amendment is in the discretion of the court. The refusal of an amendment to a defendant's answer, by way of objection to a plaintiff's petition, for a defect in such petition unknown to the defendant, and concealed by the plaintiff, and discovered only upon the trial of the case, is not within the discretion of the court. At any rate, to refuse such amendment would be an abuse of the court's discretion. However, the question has been several times heretofore decided. (*Kansas Pacific Rly. Co. v. Nichols, Kennedy & Co.*, 9 Kan. 235–242; *Seip, Sheriff, etc., v. Tilghman*, 23 id. 290; *Coulson v. Wing*, 42 id. 507, 22 Pac. 570.) In all these cases there was a defect of parties plaintiff, such as in the case before us, remaining undiscovered until the trial, and in all of them it was ruled that the objection could be raised only by answer.

The cattle in question were brought to the shipping point from Oklahoma, which is south of the thirty-seventh parallel of latitude. The regulations of the state live-stock sanitary commission require an inspection of cattle coming from points below that parallel. This inspection was not had in this instance. The fact that it was not had was not discovered by defendant until upon the trial. It then asked leave to amend its answer by setting up plaintiff's dereliction in failing to submit his cattle to inspection. The court refused the leave asked. There was no error in this. That plaintiff violated the regulations of the live-stock commission in bringing his cattle into the state without submitting them to inspection constituted no excuse to the defendant for communicating disease to them after they got here.

3. Failure of inspection no defense.

Claims of error other than those above discussed have been raised, but we do not think it necessary to

give them consideration.  For the error of the court in overruling the defendant's objection to the prosecution of the action in the name of one partner only, the judgment of the court below is reversed, for such proceedings in accordance with this opinion as may be hereafter necessary.

DOSTER, C. J., dissenting from first and second paragraphs of the syllabus and corresponding portions of the opinion.

CUNNINGHAM, J. (dissenting) : I dissent from the doctrine announced in the second syllabus of this case and the corresponding portion of the opinion, and, for that reason, do not think that the judgment of the district court should be reversed.  It was made to appear by the testimony on behalf of the plaintiff that Nichols should have been made a party plaintiff, and the defendant, if it had desired to avail itself of the defect thus made manifest, should have complied with the provisions of the statute, or made application to the court to bring Nichols in as a party, as provided by section 41 of the civil code (Gen. Stat. 1897, ch. 95, § 27; Gen. Stat. 1899, § 4285).  It, however, did neither of these, but elected to proceed with the trial upon the issues and with the parties as made by the original pleadings, and the whole case was presented to the jury upon its merits.  I think plaintiff should not now be heard to complain.

Besides this, Nichols testified as a witness for plaintiff that he had no interest in the case.  He was present at the trial and knew what the lawsuit was about, made no application to be made a party thereto, but permitted the suit to proceed to judgment in favor of Hucklebridge.  In any subsequent action, he would

beyond any question be estopped from claiming any interest in the suit as against the plaintiff in error.

The case was tried upon its merits and, as I view it, without prejudicial error.

ELLIS, J. (dissenting) : I agree with the majority that the unqualified statement of the witness that he was to participate in the profits and share in the losses (there being no claim that as a sharer in the losses his liability was limited to the sum of the profits which had accrued or might accrue in his favor) makes him a partner of the plaintiff below.

In the opinion written for the majority appears the following:

"It would appear from the record that the fact of Nichols's partnership relation was not known to the plaintiff in error, the defendant below, until it was disclosed at the trial in his cross-examination."

If this statement is material, I respectfully submit that it is not justified by the record. There is no showing as to when defendant below first learned of Nichols's interest in the cattle. On his direct examination the witness did not disclose such interest, and only revealed it in response to direct questions asked by the attorney for defendant below on cross-examination. Surely there is no presumption that such attorney had no notice or knowledge of the facts drawn out by him before he propounded the interrogatories quoted in the opinion.

The statute controlling provides (Gen. Stat. 1897, ch. 95, § 89 ; Gen. Stat. 1899, § 4339):

"The defendant may demur to the petition only when it appears on its face that there is a defect of parties plaintiff or defendant."

And section 91, chapter 95, General Statutes of 1897 (Gen. Stat. 1899, § 4341):

"When any of the defects enumerated in section 89 do not appear upon the face of the petition, the objection may be taken by answer; and if no objection be taken either by demurrer or answer, the defendant shall be deemed to have waived the same."

If the statute just quoted does not fairly apply to this case, then I respectfully urge that it can subserve no useful purpose in our law; it is impotent and meaningless. If there had been a satisfactory showing that the defendant was really surprised, and especially if it had appeared that the plaintiff below had intentionally concealed the fact of Nichols's interest, then the course suggested by the chief justice ought to have been pursued, on defendant's application to the court.