McKEE, Appellant, *v.* CLARK, Respondent

(No. 8360.)

(Submitted April 29, 1943. Decided July 12, 1943.

Opinion on Rehearing January 21, 1944.).

[144 Pac. (2d) 1000.]

*Messrs. L. P. Donovan* and *Patrick L. Donovan,* for appellant,

440

*Mr. D. W. Doyle,* for respondent, 

MR. JUSTICE ERICKSON delivered the opinion of the court.

On rehearing. This appeal is from a judgment of the district court for Toole county, where after trial of the cause the court, sitting without a jury, entered judgment for the defendant and awarded him damages as prayed in his cross-complaint.

The facts are these:

The plaintiff was the owner of land within the external boundaries of the Kevin Co-operative State Grazing District, but so far as the record discloses, he was neither a member nor permittee of that grazing district. The lands were unfenced. Defendant's horses were found by the plaintiff upon his lands and he gathered them up and impounded them. Notice was given the defendant as required by section 3379, Revised Codes. Defendant regained possession of the animals, after they had been in the plaintiff's custody for some time, under the provisions of the statute. The defendant admitted ownership of the horses, alleged that they were running at large upon the open range, and admitted that he had no permission from plaintiff to graze his horses upon the plaintiff's land; otherwise the answer was a general denial.

In his cross-complaint defendant alleged that the horses were unlawfully gathered from the open range and confined under plaintiff's control; that the horses were so negligently handled that they were injured to the extent of $3,840, and that some of the animals were missing when they were turned over to defendant by plaintiff. In its judgment the district court found that plaintiff had failed to establish his case, and that the allegations of defendant's answer and cross-complaint were true except as to the amount of damages, which the court fixed at $540. Objection was made, when the original judgment was entered, that the court had failed to make findings which were subsequently made, but which changed in no way the result.

Plaintiff contends that since his land is within the boundaries of the district, even though not shown to be owned or controlled by the district and even though plaintiff is not shown to be a member, any entry on his land, though it is not fenced, by defendant's horses is a trespass for which he may impound them, as he has done.

Section 26 of Chapter 208, Laws of 1939, provides:

"(1) No person whether a member or non-member of a state ██ ██ district, shall graze stock within the external boundaries of a state district, or trail stock across, upon or into any range of a state district unless he shall first obtain a grazing permit or a crossing privilege from the state district; provided, that this provision shall not require any person to obtain a grazing permit to graze upon land owned or controlled by him if the stock so grazed is restrained from grazing upon or trailing across lands controlled by the state district. Any person violating the provisions of this Section shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not less than ten dollars ($10.00) nor more than five hundred dollars ($500.00).

"(2) If any stock grazes upon lands owned or controlled by a state district without the permission of the state district, such stock may be impounded for trespass and sold in the manner provided in Section 3379 of the Revised Codes of Montana, 1935."

It is readily apparent that plaintiff is without right to pursue the remedy provided in subdivision (2) of section 26. That subdivision applies only where stock grazes upon land owned or controlled by the district. In his brief on rehearing plaintiff specifically states his land is not either owned or controlled by the district. The statute contemplates that there may be land within the external boundaries of the state district not owned or controlled by it. Section 27 provides in part: "When any land is situated within the boundaries of a state district and is not leased or controlled by said district and not surrounded by a legal fence, [etc.] * * *." Subdivision 2 confers upon the district the right to impound trespassing livestock found on land owned or controlled by the district, without regard to whether or not the

442

land is fenced or whether or not the animals merely stray upon the property or are driven upon it. It does not make section 3379, Revised Codes of 1935, applicable except to the extent that it adopts that section as the means by which the sale of impounded stock may be had.

Certainly this civil action may not be maintained by reason of ▮ subdivision (1) of section 26. That subdivision provides a purely criminal remedy and without a question it applies to cases where stock is wilfully driven upon the property within the external boundaries of the district, either for the purpose of grazing the stock there or for the purpose of crossing the land with the stock. No civil remedy is contained in that section, nor is there anything in the Act as a whole which would indicate any intention on the part of the legislature to amend section 3379 so as to make mere presence upon this plaintiff's property wrongful within the contemplation of that section.

Much of plaintiff's argument is to the effect that the plaintiff ought to have the right to proceed as he has here done and that the manifest purpose of the Act is to furnish protection for his privately owned land within the external boundaries as well as the land owned and controlled by the district. He cites section 1 of the Act, which states that one purpose of the Act is to "* * * provide for * * * protection of dependent commensurate ranch properties as defined herein." He further cites section 11 of the Act, which requires persons owning or controlling livestock in the vicinity of the district to take notice of its external boundaries. Further reliance is had by plaintiff on section 27 of Chapter 208, which provides: "Farming lands lying within the external boundaries of a state district shall be protected by the owner or lessee to the extent of a legal fence as described in Subsection (1) of Section 3374 of the Revised Codes of Montana, 1935. The state district or its members shall not be liable for damages unless such farming lands are protected by a sufficient fence as described in this Section." It is his argument that the latter section, by inference, suggests that as to non-members and outsiders, the owner of farming land, which obviously would not

be owned or controlled by the district, might maintain an action for damages even though the land is not fenced. We do not think that these provisions as set out above, nor the other general provisions of the Chapter, are sufficient to indicate any legislative intent to permit plaintiff to proceed as he has here done, and even if it could be said that the legislature may possibly have had in mind the proposition plaintiff here contends for, there are no operative words in the Act to bring about that result.

Since plaintiff may not avail himself of the provisions of Chapter 208, supra, as against the defendant, the open range law applies, the land being unfenced and there being no evidence that the defendant herded his horses upon the plaintiff's land, or any evidence to bring the facts within the rule of *Hill* v. *Chappel Bros.*, 93 Mont. 92, 18 Pac. (2d) 1106. Since that is the case, the plaintiff is not entitled to any damages for the trespass of defendant's horses upon his land, nor is he entitled to any compensation for the care and the feed of the horses during the time he had them impounded.

The district court found generally on the matter of damages for the defendant. There is a conflict in the evidence as to the extent of these damages. The district court resolved this conflict in favor of the defendant, and there is evidence supporting the court's finding, both as to the fact of damage and as to the amount. This is true, also as to the finding that some of the horses and colts were missing at the time the animals were released.

A good many witnesses testified as to this matter of damages to the horses belonging to defendant. It is undisputed that there were over 200 horses in the herd impounded by the plaintiff. These included horses owned by other people as well as by defendant. It is also undisputed that there were a number of stallions in the herd and that this large herd of horses was kept corralled in small, dry corrals during a large part of the time they were in plaintiff's possession. Anyone familiar with horses, particularly range horses, knows that there must be some injury to them when held in a large herd by reason of the fighting and

kicking that will ensue. In addition to the testimony of the defendant and other owners of horses impounded, disinterested witnesses who saw the horses while they were corralled testified to their poor condition and disinterested witnesses who saw the horses prior to the time they were taken up and immediately thereafter testified to the deterioration in their condition. Testimony was given as to the value of the horses at the time they were picked up by the plaintiff and their value at the time they were released. The testimony as to the injury done to the horses while they were being held by the plaintiff was all controverted, ▮ but we, of course, adhere to the rule often stated by this court, that where there is substantial evidence to support the judgment of the trial court, even though it is controverted, we are bound by the lower court's determination of the facts.

The defendant testified that some eight head of horses and colts were not returned to him and a part of the damages consists of this loss. It is urged that the proof is insufficient to prove that this loss occurred while the herd was impounded. The horses were tallied when impounded. They were not tallied on the day on which the defendant regained possession of them. This was occasioned by the refusal of the plaintiff and Potter, the man who actually had possession of them, to corral them so that a tally might be made. The defendant took with him, the day on which he regained possession of the horses, the sheriff for the express purpose of making this tally. While it is true darkness set in while the horses were being driven back to defendant's ranch, he testified that they were kept well bunched up and on the move and that none escaped from the main herd. An actual count of the horses was made the next morning at defendant's ranch. We think the evidence sufficient to sustain the court's finding that eight of the animals were not returned to the defendant.

Under stipulation it was agreed that this case would determine ▮ two others arising out of the same impounding but with different defendants and different horses. The plaintiff contends that the court erred in allowing witness fees for each of the three cases. The plaintiff moved to have the costs retaxed,

and this motion was denied. We think the court erred in denying the motion. In this case the witnesses testified but once under a stipulation that the evidence would be used in all three cases. In a like case—*Brown* v. *Sears,* 23 Misc. 559, 52 N. Y. Supp. 792—the witnesses were allowed but one fee. We think this to be the proper rule. (See also, *Gelfond* v. *Kirschenbaum,* 249 App. Div. 894, 292 N. Y. Supp. 568, and 20 C. J. S., Costs, secs. 232, 233, p. 473.)

The cause is remanded to the district court with direction to retax costs, and the judgment will stand affirmed.

The opinion heretofore rendered herein on July 12, 1943, is ordered withdrawn and the above substituted in its place.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANDERSON and ADAIR concur.

MR. JUSTICE MORRIS:

I dissent. On appeal every vital finding of the trial court was shown to be erroneous, yet the lower court is affirmed. The majority opinion virtually nullifies the Grazing Act; hence the length of this dissent.

This action was commenced to enforce a lien for damages and costs against a band of horses belonging to the defendant which was found trespassing on lands either owned or under lease by the plaintiff. The plaintiff's lands are located within the external boundaries of the Kevin Co-operative State Grazing District, a district created under and by virtue of Chapter 208 of the Session Laws of 1939, hereafter referred to as the Grazing Act. The horses were gathered at the instance of the plaintiff and with the assistance of Sam Potter, Jr., the cross-defendant, and others either in the employ of McKee or Potter.

The complaint alleges plaintiff's ownership of the land which is located in Townships 34 and 35 and Ranges 1 and 2 West, Toole county, Montana. It further alleges inclusion of plaintiff's lands in the state grazing district mentioned, and the defendant's ownership of 204 horses and colts, and that the defendant permitted and caused the horses to graze upon plaintiff's lands without per-

mission of the co-operative grazing district or the plaintiff, resulting in damages in the sum of $184. The complaint further alleges the giving of the notices to the defendant of the impounding of the horses required by section 3379, Revised Codes.

The answer admits defendant's ownership of the horses, but alleges that they were running at large on open range; admits that he had no permission from the plaintiff or the district to graze the horses upon the lands described, and to the other allegations of the complaint a general denial is entered, followed by a cross-complaint against the plaintiff and Sam Potter, Jr., alleging the unlawful gathering of the horses from the open range and the confining thereof at the Potter ranch, resulting in damages to the horses in the amount of $3,840 and the failure of Potter to return eight head of horses and three colts of the reasonable value of $240. By stipulation the cause was heard to the court sitting without a jury.

It appears from the court's statements that three cases are involved, all of which were consolidated and tried as one by reason of the fact that the subject matter arises out of the one question relative to the unlawful impounding of the horses. Part of the horses belonged to a party by the name of Gasser and a smaller part to Walter Clark, son of the defendant in this action. It was agreed by the parties and approved by the court that the evidence adduced at the trial in this action should apply to the two other cases but it does not appear how the amount of damages to be allowed the two other defendants shall be incorporated in the decree. On the conclusions of the hearings no findings of fact were submitted nor made, but in the body of the judgment as originally entered the court states that the plaintiff failed to establish his case and that the allegations of defendant's answer and cross-complaint were true, except as to the amount of damages, and thereupon awarded defendant damages for $540 with costs. The plaintiff in due course excepted to the judgment on the ground that the court had made no findings of fact and conclusions of law and when that question came up for argument it appeared that counsel for plaintiff had verbally requested the

court to make findings at the conclusion of the hearing but had not submitted his request in writing and by stipulation it was agreed that the question of failure to make a written request for findings might be waived, and the court thereupon made and entered its findings of fact and conclusions of law but made no revision of the former judgment except to fix the costs allowed the defendant at $304.25. From such judgment the plaintiff and cross-defendant appealed, the plaintiff in his own right, and the plaintiff and cross-defendant jointly.

The principal defenses relied upon in the lower court were (1) failure to establish the creation of the Kevin Co-operative Grazing District, hereinafter referred to as the District, and (2) that the lands upon which the alleged trespass occurred were "unfenced and unenclosed and open range," (3) that the plaintiff not being a permittee of the Kevin Grazing District, was not entitled to maintain the action.

The cross-complaint alleges damage arising out of negligence in the care and handling of the horses during the eight days they were impounded and held by the plaintiff and Potter, and failure to turn over eight head and three colts of the number gathered.

When the matter came on for hearing in this court counsel for the defendant and cross-complainant admitted that the District had been regularly created and thereupon abandoned defense number 1. After extended consideration by this court, the lower court was affirmed. A motion by the plaintiff and cross-defendant for a rehearing was again in conference here for an extended period. We ultimately granted the motion, and in the order relative thereto we requested arguments on the following points:

1. Can there be land within the external boundaries of the district which is not part of the district?

2. How does land within the district become "controlled" by the district, within the meaning of Sec. 26, subd. (2), and Sec. 27 of the Act?

3. Does land come within the control of the district by reason of the obtaining, by the person owning and controlling it, of a

grazing permit from the district, under Sec. 26, subd. (1), or Sec. 27 of the Act?

4. What effect, if any, has the establishment of a grazing district upon the applicability of the open range or the common law rule as to trespass (See Sec. 26, subd. (3), and Sec. 27 of the Act) upon

(a) Land "controlled" by the district?

(b) Land "within the external boundaries" of the district, but not "controlled" by the district?

5. Where land is shown to be within a district, or "within the boundaries" or "within the external boundaries" of a grazing district, does the owner's complaint for trespess by defendant's cattle show a cause of action without showing that despite the existence of the district, the cause of action is his and not the district's under Sec. 26, subd. (2), or is that fact presumed unless facts are pleaded showing otherwise?

6. What is the status of cross-defendant Potter and his land with reference to the district, and what bearing has that status upon the issues?

As these are the basis of the attack of the plaintiff and cross-defendant on the original opinion, and constitute the points about which we were in doubt, we will take them up in order, interspersing as we proceed with such comments as to the defenses heretofore enumerated, and as to the cross-complaint as it appears necessary.

As to question 1: Section 9 of the Grazing Act contains an outline of the preliminary steps necessary for the creation of a grazing district. Section 3 provides for the creation of the State Commission to be composed of five persons to be appointed by the governor; section 5 empowers the Commission to appoint a secretary; to particularize, section 9 provides that when three or more persons owning or controlling property, who are livestock operators within the proposed district, decide to create a state district they shall submit their proposal to the Commission along with specified information relative thereto; thereupon the secretary of the Commission shall make an investigation and if his report

shall justify further action the Commission shall give due notice of a hearing to be held by the secretary, and after consideration of the hearing so held by the secretary and his report thereof to the Commission, if the creation of the district shall appear feasible, beneficial or desirable to the majority of those who own or control more than fifty per cent of the lands to be included in the district, the Commission may issue a certificate of approval.

Section 10 follows with these provisions: ''Upon the issuance of the certificate of approval, three or more persons who own or control commensurate property and are livestock operators within or near the proposed state district may prepare articles of incorporation and file them in the office of the secretary of state without payment of any fees; said articles to be accompanied by the said certificate of approval and to be signed, sealed, and acknowledged. Such articles as prescribed by the commission shall substantially state the following:'' Then follow numerous essential acts and requirements relative to incorporation, ending by directing the secretary of state to issue the certificate of incorporation if such acts and requirements have been complied with.

The Grazing Act having provided, as it does, that a district may be created on application of stockgrowers owning or controlling more than fifty per cent of the land within the proposed district, it necessarily follows that there may be some persons who own or control lands within the district who do not join in the co-operative control thereof. The lands of such persons are brought within the ''external boundaries'' of the district, when the creation thereof is consummated as authorized by the Commission, pursuant to the provisions of sections 9 and 10 as heretofore mentioned, and their rights and privileges are fully outlined and protected by section 27 of the Act, which provides: ''When any land is situated within the boundaries of a state district and is not leased or controlled by said district and not surrounded by a legal fence, any person owning or controlling such lands shall have the right to obtain a grazing permit from the state district, the size of which shall be determined by the carry-

ing capacity of such land, full consideration being given for location of necessary stock water. The use of such permit shall be subject to all regulations by the state district. If the person owning or controlling such land declines to secure such permit, or fails to lease such land to the state district at a fair lease rental and fails to fence such land at his own expense, he shall not be entitled to recover damages, for trespass by stock grazing under permit, but the state district shall not issue a permit to use the carrying capacity of such land. Farming lands lying within the external boundaries of a state district shall be protected by the owner or lessee to the extent of a legal fence as described in Subsection (1) of Section 3374 of the Revised Codes of Montana, 1935. The state district or its members shall not be liable for damages unless such farming lands are protected by a sufficient fence as described in this Section." Such persons may join in the cooperation of the district at any time or they may obtain grazing permits from the district even if they do not join in the cooperation activities, but if they neither join nor obtain a permit they must fence the lands they own or control before they may have any right of action for trespass against *any permittee* of the district. It is well to keep in mind that the Act does not say that such persons may not maintain an action in trespass against an outsider, such as the defendants in the instant action. Sections 3378 and 3379, Revised Codes, referred to in section 26 of the Act will be later adverted to.

Sections 9 and 27 compel an affirmative answer to question one submitted for reargument.

Number 2. When a grazing district is incorporated under sections 9 and 10 of the Act as heretofore outlined, section 11 follows with this provision: "State grazing districts organized under this Act shall, upon completion of their organization, file with the county clerk of each county in which their lands lie, a map or plat of the external boundaries of such state district so created and a copy of their articles of incorporation. * * * It shall be the duty of any person herding or in control of any livestock in the approximate vicinity of any state districts to ascertain the bound-

ary lines thereof.'' The effect of this section is to charge all persons owning livestock running at large in the vicinity of the district with knowledge of the external boundaries thereof and render them liable for trespass thereon. The remedies for trespass on the district are provided by section 26. Subsection 1 thereof provides a criminal remedy; subsection 2 provides a civil remedy and it clearly appears from various terms of the Act that the civil remedy must be prosecuted by the party injured by the trespass. In other words by ''the real party in interest.'' This provision of the Act is more fully dealt with under another heading. Trespass is not ordinarily a criminal offense but trespass on a state grazing district created under Chapter 208, supra, is a misdemeanor under subsection 1 of section 26 of the Act, and a misdemeanor is a criminal offense. (Sec. 10722, Rev. Codes.) Anyone interested in the district, or the county attorney, could set in motion the county machinery provided for the prosecution of crime, and in that sense the land in the district is controlled by the district. The district would also be the proper party to prosecute a civil action for trespass on lands acquired by it under subsection 3 of section 12, for the reason that trespass on such lands would be an injury to the district as a whole and not, as here, to a particular individual. As to the other phases of question 2, the district has control over all the lands within the external boundaries of the district to further one of the most vital purposes of the grazing Act, that is to prevent overstocking of the range with the resultant injury to the grass, and take such other measures as shall tend to protect the range under its general supervision. The control mentioned in section 27 of the Act relative to the land of an owner or lessee, not an active cooperative in the district, is not different from the control of the land owner or lessee who has joined in the cooperative enterprise, except that the non-cooperative land owner or lessee can maintain no action for trespass upon his lands unless he encloses such lands with a legal fence as described by section 3374, Revised Codes.

By reference sections 3374, 3378 and 3379, Revised Codes, are, in part, incorporated in and made to apply to the Grazing Act to

a limited extent, to-wit: Section 3374 specifies what constitutes a legal fence; section 3378 mentions the liability of the owner if his stock break into the enclosure of another surrounded by a legal fence. A legal fence enables the land owner in the district who is not a permittee to maintain an action in trespass; without such fence he cannot maintain such an action. Section 3378 has no application to this controversy for the reason that the defendant's horses were "running at large contrary to law." Section 3379 supplies the provisions of the law that govern one who gathers and holds livestock for trespass and does not otherwise apply to the Grazing Act in any manner whatever.

Number 3. The owner's control over his own land in the district is not affected in any manner by his obtaining a grazing permit from the district but it benefits him in this: It throws around his unfenced range a barrier legally designed to repel trespass as fully and effectively as would a legal fence. It enhances the protection of his range without lessening his control over his own lands in any particular, and by reason of being incorporated within the district, injury to his range by a trespass upon the district gives him a right to recover in his own name, for the injury sustained. If the Act intended anything less, it would be no improvement on the old law.

Number 4. The "open range" contention is a myth; a mere echo of by-gone days which were dear to the heart of the old-time stockman. Lands, the title to which remain in the federal government, have all practically been brought under the Taylor Grazing Act, 43 U. S. C. A. sec. 315 et seq.; are incorporated in forest reserves, wild life reserves, or their character as open range eliminated in some other manner; state lands, and unoccupied privately owned lands, are quite generally under lease to stockgrowers and farmers. Even if all the state could be properly classed as open range, when the incorporation of the Kevin State Co-operative Grazing District of Montana was perfected, and a copy of its articles of incorporation accompanied by a map or plat showing the external boundaries of the district, were filed in the office of the clerk and recorder of Toole county, as provided

by section 11 of the Act, open range within that district ceased to exist. The answer to both subdivisions (a) and (b) is given in detail under question number two, supra. Briefly repeated here, the mode of control of the district in so far as trespass is concerned, is by both criminal and civil actions; the criminal as for misdemeanor; the civil by prosecution of an action for damages arising from trespass; the right to maintain the action in tort being in the corporation or the land owner depending on where the injury is to the district as a whole, or, as here, whether the injury is to the individual land owner or lessee. Section 27 defines the rights and lays down the rules to govern the internal affairs of the district. It has no direct application to third parties.

Number 5. This question brings out defendant's defense number 3, that is that the plaintiff has no right to maintain this action. This has been fairly well covered by what has already been said, but it can be further said that the trial court found that at the time the trespass was committed, the plaintiff was in possession and control of the lands described in the complaint, "either as owner or lessee;" that the lands mentioned "were within the external boundaries" of the Kevin Grazing District; and that the horses of the defendant, along with others, were taken while they "ran at large upon said open range within and without the external boundaries of said Grazing District." These findings, except as to the lands being open range, are clearly established by the evidence. Indeed they are freely admitted by the defendant.

Hence these facts are established beyond question: Defendant's horses were taken while trespassing on lands in the possession of the plaintiff; the defendant's ownership of the horses was admitted; notice of impounding was duly given as provided by section 3379, Revised Codes; the lands where the horses were taken were within the external boundaries of the district. Every fact essential to the plaintiff's right to recover is either admitted or proved beyond any reasonable doubt, and the penalty for the trespass is clearly and specifically set out in the Act. Now as to the rights of one in possession of land to maintain an action in tres-

pass: Section 24 of 63 C. J. 907, gives the established rule as: "Possession is sufficient to maintain trespass when coupled with some interest in the land." In an old New York case, *Evertson* v. *Sutton,* 5 Wend. 281, 21 Am. Dec. 217, it was held that one in possession of any property may maintain an action in trespass against all the world except the true owner. The plaintiff here had not only possession coupled with an interest in the land, but he was the owner, and he, not the district, was the only one alleged to have suffered any injury by the trespass and he was the real party in interest. (Sec. 9067, Rev. Codes).

Section 324 of 63 C. J. 1086, further says in its treatment of the question as to one in possession having the right to maintain the action that "Defendant cannot show title in a third person as a defense." Here one of the defendant's three principal defenses is that the district and not the plaintiff is the proper party plaintiff. Many other authorities supporting the rule on the rights of one in possession of property to maintain the action are found listed in 2 Bouv. Law Dict., Rawle's Third Rev., p. 3319, under the heading of "Trespass Quare Clausum Fregit" where we read that "Mere possession is sufficient to enable one to maintain the action." The question is also treated at length and a long line of cases cited in a note beginning on page 1910 in 30 L .R. A., n. s., and also by numerous citations in 42 Words and Phrases, Perm. Ed., p. 449, under the heading of "Trespass, Possession by person injured."

The decisions of this court are in accord with the general rule. (*Noyes* v. *Black,* 4 Mont. 527, 2 Pac. 769; *Custer Consolidated Mines Co.* v. *City of Helena,* 45 Mont. 146, 153, 122 Pac. 567; *Coburn Cattle Co.* v. *Hensen,* 52 Mont. 252, 157 Pac. 177; *Thrasher* v. *Hodge,* 86 Mont. 218, 283 Pac. 219; *Thompson* v. *Shanley,* 93 Mont. 235, 17 Pac. (2d) 1085; see, also, *Humphrey* v. *Twin State Gas & Elec. Co.,* 100 Vt. 414, 139 Alt. 440, 56 A. L. R. 1011, 1016.) In addition to the cases just cited, let us see what this court has said relative to section 9067, Revised Codes, wherein that section provides that, "every action must be prosecuted in the name of the real party in interest." In

*Thompson* v *Shanley,* 93 Mont. 235, 241, 17 Pac. (2d) 1085, it was said: ''As to whether there is a defect of parties plaintiff: This action must be prosecuted 'in the name of the real party in interest.' (Section 9067, Rev. Codes 1921)''. The action was by one of three brothers to recover damages for injury to an automobile registered in the name of the plaintiff. It developed in the trial that two other brothers each had a one-quarter interest in the car. At page 244 of 93 Mont., at page 1086 of 17 Pac. (2d,) it was further said: ''The two brothers of the plaintiff, being part owners of the car, are entitled to a part of the benefits of the action. They each have an actual and substantial interest in the subject-matter of the suit. 'The real party in interest * * * is the person who will be entitled to the benefits of the action if successful; one who is actually and substantially interested in the subject-matter.' (*Gross* v. *Heckert,* 120 Wis. 314, 97 N. W. 952, 954; *Stinchcomb* v. *Patteson,* 66 Okl. 80, 167 Pac. 619; 19 Ency. Pleading & Practice 544; *St. Louis & S. F. R. Co.* v. *Webb,* 36 Okl. 235, 128 Pac. 252; *Porter* v. *Baldwin,* 139 App. Div. 278, 122 N. Y. Supp. 1043; *Atchison, T. & S. F. Ry. Co.* v. *Hucklebridge,* 62 Kan. 506, 64 Pac. 58; *Louisville, N. A. & C. Ry. Co.* v. *Hart,* 119 Ind. 273, 21 N. E. 753, 4 L. R. A. 549)'' (See, also, *Osborne* v. *McDonald,* 91 Mont. 83, 5 Pac. (2d) 568; *Best* v. *Boyer,* 98 Mont. 40, 37 Pac. (2d) 331; and *Humphrey* v. *Twin City G. & E. Co.,* 100 Vt. 414, 139 Atl. 440, 56 A. L. R. 1011.) At page 1016 of 56 A. L. R. it was said: ''A trespass is an injury to possession.''

The corporation in the action at bar might have been made a party without justifiable objection, but it was not a necessary party.

Number 6. The cross-defendant Potter was obviously made a party to the cross-complaint as it was in his custody the horses were impounded and on his premises.

As to the question of the damages to the horses, and the number alleged to be short of the total number gathered by the plaintiff and the cross-defendant Potter: Finding number 10 is in effect that when the horses were surrendered to the defendant

the number was short by eight horses and three colts. Finding number 12 is that by reason of the improper care of the horses while in the custody of the plaintiff and Potter they suffered damages to the extent of $300. This amount with $240 allowed for the missing animals appears to make up the total damages allowed the defendant in the amount of $540. There is no probative evidence to sustain either item of the damages allowed the defendant. All the testimony adduced, except the testimony of Dr. Jacobson, the deputy state veterinarian, was given by interested parties or their respective employees and was in sharp conflict. As to the alleged negligence in watering and feeding of the horses, no testimony given was pertinent thereto except by the men who had active charge of the horses looking after their feeding and watering. All of such testimony was favorable to the plaintiff and the cross-defendant. The testimony of the witnesses to the contrary as to the care of the horses was of no value as they had nothing to base their testimony on except the condition of the horses at the time they were turned back to their owners and there was no testimony given in behalf of the cross-complainant as to the condition of the horses when they were taken up by the plaintiff and cross-defendant by which any basis could be established that would enable the court to make any comparison between the condition of the horses before they were gathered and when they were turned back to the owners. Without such basis the condition of the horses before and after was left to mere speculation. Dr. Jacobson testified that the horses were in about the same condition as other range horses in the vicinity. The defendant lives more than 21 miles from the place where the horses were taken up in August and there is no testimony as to when, if at all, he had seen the horses prior to his finding them in the custody of the plaintiff after they were turned out at the beginning of the grazing season. The evidence does not establish any injury to the horses by neglect of the plaintiff or Potter.

As to the alleged missing eight horses and three colts, the horses were turned over to the defendant without being tallied.

It was late in the evening and the defendant accepted the horses without tallying, but he and his help were offered accommodation for the night by Potter which they declined to accept, and left with the horses for a night drive home, a distance of some twenty miles, where they arrived about three o'clock a. m. the next morning. With the opportunity for a few head of horses to drop out of a band of some 300 in the dark, no explanation as to how eleven head could have disappeared is shown in the record, no evidence that any had died, no explanation as to whether or not search had been made to discover whether the missing animals had escaped back to the "open range" or not, and in the absence of such evidence there is nothing to justify the award to the defendant of $240 for the missing animals. They were branded and no contention is made that they were stolen or rebranded.

The allowance of three witness fees to each witness under the arrangement to try the three cases as one, cannot be upheld on any ground.

The judgment of the lower court cannot be sustained on any rational construction of the Grazing Act and should be reversed, and judgment for the plaintiff directed.