## CLEMENTS VS. LAMPKIN et al.

1. AMENDMENTS: *To answer must be pertinent to defense.*

   L. and others sued T. in chancery for specific performance of a contract to convey the southeast and southwest quarters of a section of land, making C,, who was claiming the southeast quarter under color of title, a defendant; and praying to quiet their title to the southeast quarter as against him, and also for specific performance against T. C. answered as to the southeast quarter, and afterwards asked and was refused permission to file an amendment alleging his acquisition of title *pendente lite* to the southwest quarter.

   *Held,* That the acquisition of title to the southwest quarter was no defense to the charges as to the southeast quarter, and the amendment was foreign to his defense, and was rightly refused.

2. CHANCERY PLEADING: *Multifariousness, how corrected.*

   Multifariousness is not ground for demurrer under the Code practice. It may be corrected by motion to strike out, or to make the bill more specific, or a court of chancery may compel the plaintiff to elect on which ground he will prosecute the suit.

3. CHANCERY PRACTICE: *Pleading a decree. Bill of exceptions.*

   A decree relied on and referred to in pleading should be brought upon the record literally. It is loose practice to give the purport of it in a bill of exceptions.

4. ADVERSE POSSESSION: *Continuance of, presumed until, etc.*

   Possession once established by material acts of visible, notorious ownership, must be presumed to continue until open, notorious and adverse possession be proven to be taken by another.

APPEAL from *Crittenden* Circuit Court in Chancery.

Hon. L. L. MACK, Circuit Judge.

*Peters, of Tennessee,* for appellant.

*Lyles, of Tennessee, contra.*

EAKIN, J. Appellees, the heirs of John W. Lumpkin, the administration upon whose estate had been closed,

sued the heirs of Robertson Topp, a non-resident, deceased, upon whose estate no administration had ever been taken in Arkansas; for specific performance of a title bond to convey a tract of land in Crittenden county, executed by Topp to John W., in the lifetime of both. The lands were described as the fractional northeast quarter, the southeast quarter and the southwest quarter of section twenty-three, in township eight north, range eight east. No defense was made by Topp's heirs, nor is there any complaint of the decree on their part.

Appellant, A. M. Clements, together with divers tenants, were joined as parties defendants, charging that said Clements claimed title to a part of the land, to-wit: the southeast quarter, and that he, with said tenants, was interfering with the possession of complainants and molesting them in the enjoyment of the land, under color of an invalid title. Against him the prayer of the bill was to remove a cloud from the title of complainants, and to enjoin him from further disturbance of complainants in the quiet enjoyment of their rights.

The tenants made default; Clements alone defended. In his answer he demurs to the bill for want of equity, sets up his own claim of title, denies the validity of that of complainants, and relies upon his adverse possession, and the statute of limitation.

Pending the suit, and before final hearing, he asked, and was denied, leave of the court to file an amended answer, showing that, *pendente lite*, he had purchased the southwest quarter of the same section for taxes, and praying that the suit (as to him) be dismissed.

Upon the hearing, the court granted the relief, substantially, as prayed by complainants, decreeing against the heirs specific performance, and against Clements the re-

moval of the cloud, with proper injunctions.    Clements appealed.

The court properly refused leave to defendant to amend his answer.    He was not charged, in the bill, with anything in reference to the southwest quarter of the section.    That part of the bill was directed against Topp's heirs alone. The acquisition by him of title to the southwest quarter was no defense to the charges as to the southeast quarter, and the decree could only bind him as to the issues made, and as to facts involved in the issues.    The amendment was foreign to his defense, and not necessary to his protection.    If he has a good tax title to the southwest quarter, there is nothing in the decree to preclude its assertion in another proceeding.

The bill was clearly multifarious under the old chancery practice.    Clements had no connection with either vendor or vendee.    His claim of title was wholly separate and independent, and he could not properly, against his consent, have been brought in to litigate it collaterally, in a contest between a vendor and vendee, with neither of whom he had any privity.    But, even under the old practice, the objection to multifariousness was required to be made early, and before expense incurred.    It could be taken advantage of only by demurrer, and it would have been too late at the hearing—unless the court itself should be impressed with the impropriety of the bill, and dismiss it, upon its own motion.    *Story's Eq. Pleadings, sections 271, and notes, 272.*

But multifariousness is not ground of demurrer under the new Code of Civil Practice.    It may be corrected upon appropriate motion to strike out, or make the bill more specific; or a court of chancery, which can always, in exercise of a sound discretion, prescribe equitable terms for the

invocation of its aid, might compel the complainant to elect the grounds upon which he desired to prosecute his suit. The court did not err in refusing to dismiss the bill on this point.

The complainants traced title, in their bill from a patent to Andrew Hodge, in 1847, who, they say, afterwards sold to Samuel Hodge; and further allege that, " on the eleventh day of May, 1853, the title to said quarter section was, by decree of this honorable court, vested in one Robertson Topp," and reference is made to the decree. They show then the title bond from Topp to their ancestor, and prove, with reasonable certainty, that said ancestor, about the year 1854, entered into possession of said land, and deadened a large area, for clearing. The *purport* of the decree alluded to is set forth in a bill of exceptions, which is loose practice. It should have been brought upon the record literally. It shows, however, sufficiently for this case, that the certificate of entry had been found by the court to have been assigned to Samuel Hodge, and by him to Topp. The chain of title, from the entry of Andrew Hodge, was thus established, to the extent of binding all within the chain; and also the possession of Topp's vendee in 1854.

Clements derived title from a supposed entry by one Elliott of said southeast quarter, in the United States land office, in 1840, through divers mesne conveyances to himself. There was no proof of loss of the original certificate of entry beyond the general ignorance of the witnesses as to what had become of it. They testified, in general terms, that Elliott had entered it. All the mesne conveyances from Elliott described this quarter section amongst other lands.

With the patent of 1847 to Hodge, before it, and considering the length of time intervening between the supposed

entry by Elliott, in 1840, and the testimony of witnesses during the trial, the court might well conclude that the insertion of this quarter section in the divers conveyances, in defendant's chain, was one of those mistakes so very common in the description of our lands by the government surveys, and that the chain of title on the part of defendant had failed.

The possession of Topp's vendee, once established by material acts of visible notorious ownership, which was done by putting negroes upon it, and making a deadening long known afterwards as the Lampkin deadening, must be presumed to have continued, until open, notorious and adverse possession be shown to have been taken by another. There are no acts of this kind shown on Clements' part, beginning at a time sufficiently remote to cover a period of seven years before the commencement of this suit, save this : that in 1869, during a leisure day in summer, he, with another man, went upon it and cut away from one-half to one and one-half acres of undergrowth, and then left it. This work of an idle day did not establish a *bona fide*, open, notorious and adverse possession, unless continued, or followed up by other acts looking to improvement or occupation. Such work as that, in our wide, dense, lowland forests, might pass long unobserved, even by neighboring proprietors, and would not be apt to have much significance to them if afterwards noticed. A large deadening every one understands. It is the first step towards the conversion of swamp forests into cotton fields; is attended with considerable expense, and attracts attention in the neighborhood. A small spot of undergrowth cleared away in the solitude and abandoned, means nothing as to ownership or future intention. Questions of adverse possession must be decided upon principles of reason and good

sense, applied to the habits of the people, and the circumstances of the country.

The next evidence of possession on Clements' part is by putting tenants on in 1872. That was within the period, and the statute of limitation did not apply.

There is no substantial error in the decree.

Affirm.