CATHERINE KELLER *vs.* SIOUX CITY & ST. PAUL RAILROAD COMPANY.

September 13, 1880.

**Husband and Wife—Declarations — Res Gestæ.**—Where husband and wife were travelling together on a railroad, and she was injured, his narration of how the injury occurred, made in response to an inquiry by a third person, not under such circumstances as called on her to respond to the narration, is not evidence against her in an action by her to recover for the injury.

**Railway—Stopping at Stations.**—Rule as to the length of time railroad cars should stop at a station to allow passengers to alight.

**Evidence—Damages.**—Evidence *held* sufficient to sustain the verdict. Damages *held* not excessive.

Appeal by defendant from an order of the district court for Ramsey county, *Wilkin*, J., presiding, refusing a new trial after a verdict of $975 for plaintiff.    At the trial the defendant offered to prove a statement of plaintiff's husband, (who was travelling with her,) as to the cause of the accident to plaintiff, the statement having been made in answer to a question put to him by the witness—a hotel-keeper.    The witness had been at the station when the train arrived, had secured four guests for his hotel, had taken them thither—a distance of about 25 rods from the station—and registered their names, and then had at once returned to the station at the request of a physician who informed him that an old lady had been injured there, and that his help was needed; and upon arriving at the station he heard the statement in question.    The testimony was excluded on plaintiff's objection, and the defendant excepted.

In charging the jury, the court gave the plaintiff's fourth request, as follows: "The law imposes upon a common carrier of passengers for hire the utmost human care and foresight for the safety of the passengers, and holds him responsible for the slightest neglect."

The defendant's requests and the action of the court thereon are thus stated in the record: "The requests of the defendant I have been asked to give, and in respect to them I charge: * * * 4. That if the jury find that the plaintiff and her husband were at the car door ready to alight when the train stopped at Sheldon, the defendant was not bound to hold its train there a longer time, so far as plaintiff was concerned, than to allow her to go from the car door aforesaid to and down the car steps to the platform at that place, she using ordinary diligence and celerity in her movements: provided you find that the train stopped long enough at the station to afford a reasonable time for passengers to alight with safety."

"5. That in such case, if the jury find that the plaintiff did not seasonably move forward to leave the car, or was dilatory or careless in her movements, and that such conduct on her

part contributed to or caused the injuries she received, then she cannot recover: provided you find that the train stopped long enough at the station to afford a reasonable time for passengers to alight."

The defendant excepted to all that part of each of these instructions from the word "provided" to the end of the instruction.

The defendant also excepted to the refusal of the court to give the ninth instruction requested by it, which was as follows: "That the condition of the platform south of the station building, at the time of the accident referred to in the evidence, has no bearing on the liability of the defendant in this action." The remaining exceptions are stated in the opinion.

*E. C. Palmer*, for appellant.

*Davis, O'Brien & Wilson*, for respondent.

GILFILLAN, C. J. The declaration of plaintiff's husband was not admissible as evidence. It does not appear to have been made in her hearing, under circumstances that called on her to respond to it, nor under such circumstances as made it a part of the *res gestœ*. It was evidently a narration of a past fact, made merely to satisfy the curiosity of a person who inquired about it.

The plaintiff, aged 67, entered defendant's cars as a passenger at Mankato, to be conveyed to Sheldon station, Iowa. She was safely carried to Sheldon, and was injured at that place while getting off the car, by reason, as she claims, of the train starting as she was getting off, it not having stopped long enough to enable her to alight with safety; and, as defendant claims, of her attempting to get off when the train, after stopping a proper length of time, had started again. The principal fact litigated appears to have been, did the train stop a proper length of time? On this point the court, in its general charge, instructed the jury that railroad companies carrying passengers are required "to have safe and convenient platforms or landing-places for the convenience

of passengers, and to stop long enough to give passengers time to leave the train in safety. This rule does not require them to wait an unusual time to enable sick or disabled persons to get off, unless they have notice or knowledge of the condition of such persons; but, if there is such a passenger, and his condition is known to them, they are required to allow a reasonable time for such person to safely reach the platform or landing-place." No exception was taken to this instruction in the general charge, but it was substantially repeated, upon plaintiff's first and second requests, and then excepted to. The court also, upon plaintiff's third request, instructed that "if the defendant knew or might have known, in the exercise of reasonable care, that the plaintiff was in the act of leaving the train, but had not succeeded in getting off from it, it had no right to start such train while she was in such act; and if it did so, and the plaintiff suffered bodily injury thereby, she is entitled to your verdict," and this was excepted to. As the court had already, in its general charge, and also on defendant's request, clearly and unmistakably instructed upon the effect of contributory negligence on the part of plaintiff, we do not think this request vitiated by not referring to it again, nor is that objection to it made here.

The rule stated by the court below, as to the length of time which railroad carriers of passengers ought to stop their trains to allow passengers to get off at their places of destination, is correct. When the cars stop at a passenger's place of destination, it is his duty to leave the car without unnecessary delay, and the company's to give him a reasonable opportunity to do so with safety. The exact length of time to be given must depend very largely upon circumstances. For instance, a longer time would be required when there are many passengers to alight than when there are but few; in a dark night, with the landing-place badly lighted, than when there is full light; at a difficult place to alight, than where it is easy. And as railroad companies usually carry

not merely the vigorous and active, but also those who, from age or extreme youth, are slower in their movements than vigorous and active persons, the time of stopping is not to be measured by the time in which the latter may make their exit from the cars, but by the time in which the other class may, using diligence, but without hurry and confusion, alight. Those in charge of the trains are bound to presume that there may be such persons in the cars, and, unless they know there are not, they have no right to start the trains until they have waited long enough to allow such persons to alight; nor, even after waiting a reasonable time for such persons to get off, have they a right to start the trains without using reasonable care to ascertain if there are such persons in the act of getting off.    It certainly would not be permissible for them to be so reckless of the lives and limbs of passengers as to start the trains when they know, or with reasonable care might know, that passengers are in the act of alighting.

Some of the requests on the part of defendant assume that, if the other passengers for Sheldon had alighted, then the train might move on.    Such an instruction would be apt to mislead the jury to plaintiff's prejudice, for the other Sheldon passengers may have been able to get off in less than the time that, as we have indicated, the train was bound to stop.    The fact that they had got off was only evidence, but not conclusive, that the train had stopped a proper time.    The instruction which appears from the record as though it were given on defendant's second request, states that the defendant was not bound to wait after those passengers had got off, unless some officer or employe knew, or, in the exercise of reasonable care, might have known, that plaintiff had not left, or was in the act of leaving.    The train was bound, notwithstanding those other passengers may have got off, to wait a proper time, as we have indicated, to allow passengers—not merely the young, strong and active, but the aged and more infirm —to get off; and, if it had not waited such proper time, those in charge of the train had no right to start it, unless there

was, in fact, no passenger who needed a longer time to get off. If there was such passenger, and the train had not stopped the proper time, those in charge of the train were bound to know it. The instruction as given was too favorable to defendant, because it assumes the right to start the train as soon as the other passengers were off, unless those in charge knew, or might have known, that the plaintiff needed longer time.

The settled case does not make it appear whether the qualifications to the general propositions, in what seem to be defendant's fourth and fifth requests, were in the original requests, or were added by the court. We may conjecture, from the fact that defendant excepted to the qualifications, that they were added, by the court, to the requests as originally made. But error must clearly appear. It cannot be made out by inference and conjecture. For this reason we do not consider the exceptions to these qualifications. Whether the condition of the platform contributed to cause or increase the injury to plaintiff, was for the jury to determine. The court was, therefore, right in refusing defendant's ninth request.

The plaintiff's fourth request is unquestioned law; but it is claimed that, so far as this case is concerned, it is an abstract proposition of law, not applicable to the case, and that the jury may have been misled by it. In view of the very definite statement by the court, several times repeated, of the duty and obligation of the defendant in the particular circumstances of the case, and on which its liability in the case depends, it is impossible to conceive that the jury could have been misled by this instruction. On the evidence, the case was clearly one for the jury. Nor, although the verdict is, under the circumstances, a large one, do we see any reason to suppose the jury was influenced by any consideration except the desire to fairly and adequately compensate plaintiff for the injury sustained.

Order affirmed.