## Choctaw, O. & G. R. Co. v. Burgess *et al.*

No. 631, Ind. T.    Opinion Filed July 23, 1908.

(97 Pac. 270.)

1. **PARTIES—Defects—Mode of Objection.** A general demurrer does not raise the question of defect of parties. Same must be taken advantage of by special demurrer or answer, and, as a general rule, when not so done, cannot be raised on appeal.

2. **SAME—Misjoinder of Parties Plaintiff.** When a person is unnecessarily joined as a party plaintiff, it does not result in a defect of parties plaintiff, but in a misjoinder or excess of such parties, and cannot be taken advantage of by demurrer, but by motion and when such question is not raised in the court below will not be entertained on appeal.

3. **SAME—Defects and Misjoinder—Time and Mode of Objection.** A party desiring to take advantage of a defect of or misjoinder or an excess of parties plaintiff, must promptly interpose an objection in the manner provided by law, and, failing to do so, he will not be permitted to speculate upon a favorable verdict and when afterwards he is disappointed by an adverse finding of the jury, be allowed to raise such question, either in a motion for a new trial or in the appellate court.

4. **SAME. Quaere,** as to whether or not the question of defect of parties or misjoinder or excess of parties, when neither such appears from the face of the petition, nor is known to the defendant until disclosed at the trial, in the examination of witnesses, can be raised then by proper objection to the introduction of evidence, or upon requested instructions, is not determined, so far as the procedure in force in this state.

5. **SAME—Indian Territory Procedure.** Following the rule in force in the Indian Territory prior to its admission as a part of the state of Oklahoma, the question of misjoinder of parties could not be raised for the first time by a motion for a new trial, but must have been first taken advantage of either by motion or answer.

6. **PLEADING—Misjoinder of Actions in Indian Territory.** And, under the rule in force in the same jurisdiction, when two causes of action are imperfectly stated in the complaint or petition, and it cannot be determined whether or not there is

a misjoinder of causes of action, the remedy was by motion to require the plaintiff to make its complaint or petition more definite and certain, and then, if it appeared that there was a misjoinder of such causes of action, the point should have been taken advantage of by motion.

7.   SAME — Oklahoma Procedure. Under the procedure now in force in this state, misjoinder of causes of action should be raised by demurrer.

8.   CARRIERS—Taking on and Discharging Passengers. When the servants and employes of a carrier of passengers stop its train for the purpose of taking on or letting off passengers, it is its duty to hold same a reasonable length of time to allow such passengers to board or alight with safety; and, in the absence of contributory negligence on the part of the passengers, the carrier is liable for injuries resulting from a failure to perform this duty.

9.   TRIAL—Instructions. Whenever the court, in its instructions, gives a correct interpretation and exposition of the law as it relates to the admitted or uncontroverted facts in the case, there is no ground for complaint of error.

10.   APPEAL AND ERROR—Reversal—Grounds—Excessive Damages—Remittitur. Under subdivision 4, sec. 4493, Wilson's Rev. & Ann. St. Okla. 1903, section 5202, Gen. St. Kan. 1905, and section 306, Code Civ. Proc. Kan. (section 5151, Mansf. Dig. Ark.; section 3356, Ind. T. Ann. St. 1899), where the verdict is for damages, and it appears that same were given under the influence of passion or prejudice, it is the duty of the appellate court to reverse and remand for a new trial, in some cases directing the trial court to give the plaintiff the option to remit the excess, and allow him to take judgment for the residue.

11.   SAME — Review — Question of Fact. Under subdivision 6, sec. 4493, Wilson's Rev. & Ann. St. Okla. 1903, section 5202, Kan. 1905, section 306, Code Civ. Proc. Kan. (section 5151, Mansf. Dig. Ark.; section 3356, Ind. T. Ann. St. 1899), where there is testimony reasonably tending to support the issues upon which the verdict is based, an appellate court will not disturb the findings of the lower court.

12.   SAME—Excessive Damages. Appellate courts should sparingly exercise the power of granting new trials on the ground of excessive damages, and only when it appears that the verdict is so excessive as per se to indicate passion or prejudice.

13.   DAMAGES—Measure—Personal Injuries. In an action to recover compensation or damages for injury to the person, so far as it is susceptible of an estimate in money, the plaintiff

is entitled to recover the expenses of the cure, or reasonably attempted cure, the probable costs of the future treatment or nursing, when the injury is permanent or irremediable, and the loss of time up to the verdict, and probable future loss from incapacity to do as profitable labor as before, both pain and suffering proximately caused by the injury.

14. **APPEAL AND ERROR** — Review — Amount of Damages—Case. Where the jury found that the injuries sustained were painful, serious, and probably permanent, incapacitating the plaintiff, a woman between 25 and 26 years of age, previously in good health, who was a wife and a mother, from attending to her own domestic affairs and duties, the jury having found a verdict in the sum of $5,500, and the same having been approved by the trial court, it will not be disturbed in this court.

(Syllabus by the Court.)

*Error from the United States Court for the Southern District of Indian Territory, Sitting at Ardmore;*
*Hosea Townsend, Judge.*

Action by Myra Burgess, joined by her husband, for personal injuries, against the Choctaw, Oklahoma & Gulf Railroad Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

See *ante,* p. 110, 95 Pac. 606.

This action was instituted by Myra Burgess, joined by her husband, W. N. Burgess, as plaintiffs, on the 29th day of February, A. D. 1904, in the United States Court for the Southern District of Indian Territory, sitting at Ardmore, against the Choctaw, Oklahoma & Gulf Railroad Company. Plaintiffs' complaint, omitting the caption and prayer, is as follows:

"Come now the plaintiffs, Myra Burgess and W. N. Burgess, her husband, and state that they, and each of them, are citizens of the United States, residing in the Southern District of the Indian Territory; that the defendant, Choctaw, Oklahoma & Gulf Railroad Company, is a corporation duly organized, existing, and doing business in the Indian Territory under and by virtue of the laws in force in said territory, and as such is authorized and empowered to sue and be sued in its corporate name, Choctaw, Oklahoma & Gulf Railroad Company. That said defendant com-

pany now is, and was at all the dates herein mentioned, the owner of and operating a railroad in and through the Indian Territory, and in and between the town of Ardmore in the Southern district and the town of Haileyville in the Central district of said territory, and in, through and between the town of Provence and the town of Mannsville, in said Southern district of the Indian Territory, and at said towns have and maintain depots and stations, and on said railroad run and operated engines and cars for the accommodation and transportation of passengers and freight, and was and is a common carrier of passengers for hire. Plaintiffs allege that heretofore, to wit, on the 1st day of December, 1903, the plaintiff, Myra Burgess, went to the depot and station of said defendant company at the town of Provence, and went aboard the passenger car of said defendant at said station, and became a passenger of said defendant company, for the purpose of being carried and transported from said town of Provence to the said town of Mannsville. That on said day said defendant was running and operating an engine and cars, constituting a passenger train, over said line of railroad between the said town of Provence and the town of Mannville; that said defendant company, by and through its agents and employes, stopped said train at said town of Provence, and this plaintiff, Myra Burgess, attempted to board said train; that at the time she was boarding said train, and had gotten on the steps of one of said cars, the said defendant company, by and through its agents, servants, and employes in charge of said train, carelessly and negligently, and without regard to the safety of this plaintiff, started and moved said train in a quick, rapid, careless, and negligent manner, and thereby threw this plaintiff forcibly and violently upon and against an iron railing upon said car, and upon and against other parts of said car, and thereby severely bruised her left arm above the elbow, bruised and wounded and injured her on the right side of the bowels and just above the pelvis bone, and caused and produced intense agony and suffering; that by reason of such injuries so produced this plaintiff, Myra Burgess, has constantly and continuously ever since suffered and endured great mental injury to and agony in her head, back, bowels, organs of generation, and other parts of her body; that at the time of the infliction of said injuries, as aforesaid, this plaintiff, Myra Burgess, was pregnant, and by reason of said injuries she has been constantly threatened with miscarriage, and has at all times been under the care of a physician.

That, by reason of the careless and negligent infliction of said injuries as aforesaid, this plaintiff, Myra Burgess, received a great shock to her nervous system, such as has impaired and will permanently impair her general health, that will shorten her life, and, together with said injuries, will cause her life to be one of continuous suffering and pain. That since the infliction of said injuries as aforesaid, plaintiffs have been compelled to expend, for medicines and care of a physician for said plaintiff, Myra Burgess, the sum of $300. That by reason of the foregoing facts plaintiffs allege that the plaintiff, Myra Burgess, has been damaged in the sum of $25,000."

Thereafter, on the 1st day of June, A. D. 1904, defendant filed a demurrer to said complaint, in words and figures as follows, omitting the caption, to wit:

"Now comes the defendant, Choctaw, Oklahoma & Gulf Railroad Company, by its attorneys, and demurs to the complaint filed herein February 29, 1904, and says that the complaint is insufficient in law, in that it does not state facts constituting a cause of action against this defendant. And still further, and specially demurring to said complaint, the defendant says that the same is insufficient in law, in that the allegations therein contained show that, if the plaintiff was injured at the time and in the manner and to the extent complained of, said injury was the direct and proximate result of the gross carelessness and negligence of the plaintiff, and of this the defendant prays the judgment of the court."

On the same date defendant filed its answer, in words and figures as follows, omitting the caption, to wit:

"Now comes the defendant, Choctaw, Oklahoma & Gulf Railroad Company, by its attorneys, and not waiving, but specially reserving and relying upon, its general and special demurrers to the plaintiff's complaint, and for answer to said complaint, it says that it has not sufficient information or belief whether the allegation in said complaint that the plaintiff, Mrs. Myra Burgess, on the 1st day of December, 1903, went to the depot and station of defendant company at the town of Provence, Ind. T., and went aboard the passenger car of said defendant company, and became the passenger of said company for the purpose of being transported from the town of Provence, Ind. T., to the town of Manns-

ville, Ind. T., and the defendant neither admits nor denies said allegation, but demands strict proof thereof. The defendant admits that on said date it was operating an engine and cars constituting a passenger train, upon its line of railroad between said towns of Provence and Mannsville, and admits that, by and through its agents, it stopped said train at said town of Provence, but says it has not sufficient information and belief as to whether the plaintiff Mrs. Myra Burgess, on that day, at said station of Provence, attempted to board said train, and therefore neither admits nor denies said allegations, but demands strict proof thereof. But this defendant denies that on said day and date the plaintiff Mrs. Myra Burgess, while she was boarding said train, and had gotten on the steps of one of the cars belonging to the defendant company, and that by and through its agents, employes, and servants in charge of said train carelessly, negligently, and without regard to the safety of plaintiff, started and moved said train in a quick, careless, and improper manner, and thereby threw the plaintiff forcibly and violently upon the ground against the iron railing of said car, and upon and against other parts of said car, and thereby severely bruised her left arm above the elbow, and bruised, wounded, and injured her on the right side of the bowels and just above the pelvis bone, and thereby caused and produced intense agony and suffering; and that, by reason of said injury, said plaintiff has constantly and continuously ever since that time suffered the most intense pain and agony in her head, back, bowels, and organs of generation, and other parts of her body as alleged in the complaint. The defendant denies that at said time plaintiff was pregnant, and by reason of said alleged injuries she has been constantly threatened with miscarriage, and has at all times been under the care of a physician; that by reason of the careless and negligent acts of the company said plaintiff received a great shock to her nervous system, such as impaired and will permanently injure her general health, and thereby shorten her life, and by said injury will cause her life to be one of continual suffering and pain, and denies that since the alleged accident and infliction said plaintiffs have been compelled to expend, for medicine and the care of a physician for the said Mrs. Myra Burgess, the sum of $300, or any like sum for the plaintiff, and that by reason of the facts alleged in said complaint the plaintiff Mrs. Myra Burgess, has been injured in the sum of $25,000, or any like sum. And now, having fully answered here-

in, the defendant puts itself upon the country, and prays the judgment of the court, and that it go hence with its costs."

Thereafter, on the 15th day of March, A. D. 1905, the defendant's demurrer to plaintiff's complaint was heard, and the same was sustained as to the allegation, contained in said complaint, that the plaintiff was threatened with miscarriage as a result of the injuries sustained, to which action of the court the plaintiffs then and there duly excepted; and the said demurrer was in all other respects overruled, to which action of the court the defendant duly excepted.

Thereupon, said cause was tried, with the intervention of a jury, and a general verdict returned in favor of the plaintiffs in the sum of $5,500.

Afterwards, in due time, defendant filed its motion for a new trial, on the following grounds, to wit: First, because the verdict is contrary to law; second, because the verdict is contrary to the evidence; third, because the verdict is in favor of both plaintiffs herein, when the same should have been rendered, if at all, in favor of Myra Burgess alone; fourth, because the verdict in said cause was an unlawful verdict, and could not be sustained; fifth, because the verdict makes the husband, W. N. Burgess, participate equally in the same with Mrs. Myra Burgess, and under the law he had no interest in the amount fixed by the verdict, and was not a proper party to said proceeding; sixth, because the court erred in charging the jury that it was the duty of the railroad company to stop its trains at Provence a sufficient length of time for passengers to get aboard, there being no evidence that Provence was a place where passengers were taken aboard, or that the trains stopped for that purpose, and it being in evidence that the conductor in charge of the train did not know that Mrs. Burgess intended to board the train, or had done so, and it being further in evidence that Provence was not a station where tickets were sold, and that Mrs. Burgess did not pay her fare; seventh, because the complaint filed in said cause did not state a cause of action in favor of said plaintiffs, and no

judgment therefore can be rendered upon the verdict herein; eighth, because the verdict is excessive.

Afterwards, on the 8th day of April, A. D. 1905, the defendant's motion to set aside the verdict and judgment thereon and grant a new trial was heard and overruled, defendant saving its exceptions. On the same date defendant was allowed 60 days within which to prepare and file its bill of exceptions. On the 28th day of April, A. D. 1905, said bill of exceptions was approved, signed, and ordered to be filed as a part of the record in said cause, which was accordingly done. A writ of error was in due time allowed to the United States Court of Appeals for Indian Territory, which was perfected, and this cause is now properly before this court, by virtue of the provisions of the enabling act.

The plaintiff, Mrs. Myra Burgess, testified therein, among other things, as follows:

"Q. Did you take passage on the Choctaw, Oklahoma & Gulf at any time during the month of December? A. Yes, sir; the 1st day of December. Q. Where did you get on the train at? A. Provence. Q. Going to your home at Mannsville? A. Yes, sir. Q. Was it a passenger train? A. Yes, sir. Q. How came the train to stop there? A. 1 suppose it ought to stop there; it stopped there anyway. Q. Did it stop? A. Yes, sir; it just did stop long enough for me to get up on the second step. Q. Did you have a ticket? A. No, sir. Q. Why? A. Because they didn't sell tickets at that time. Q. Did you start to get on this train, you say, did you get on the train to go to Mannsville? A. Yes, sir. Q. Just state what happeened when the train stopped. A. I got on the train at Province. The porter had taken my two little children, little girl and little boy, and kind of pitched them up on the platform, and he hollered, 'All aboard,' as he got down on the platform. He just took my two little children and pitched them up on the platform; then he takes and walks back to the back end of the coach. So I got up on the second step, and by that time the train started. I had a large grip, and it threw me on the banister there. Q. The iron railing? A. Yes, sir; I call it the banister, and then it was such a jerk it threw me back across my grip. My children

was standing on the platform there between the cars, waiting for me to get up, and when I got up and got them in the coach the train was on full speed. I was hurt so bad that I only got to the first seat, and I sat down and rode backwards. Q. Who was it you say came out? A. The porter came through, and I asked him, 'Why don't they try to kill a body when they get on the train,' but he never made me an answer at all. Q. White man or black man? A. Black man, very black. Q. Did the conductor get off the train at all? A. No, sir. I didn't see the conductor until we got nearly to Durwood."

Miss Bessie Huddleston, among other things, testified on behalf of plaintiffs as follows:

"Q. Just state to the jury, tell us what you saw. A. When the train arrived the porter jumped off, and hollered 'All aboard,' and he just kind of pitched the two children up between the cars' and never assisted Mrs. Burgess at all, just walked back to the end of the car and got on. Q. What did she do? A. She got on the train; she got up on the step and fell, first to the left and then to the right. Q. What was the train doing when she fell? A. It had started off. Q. Fell first one way, and then the other way? A. Yes, sir. * * * Q. Do you known how long the train stopped? A. No, sir; I don't, but it never stayed long enough to give her time to get on."

Mrs. Myra Burgess further, for herself, testified substantially that she would have been 26 years old in March after the accident occurred in December; that the train in moving forward threw her against the iron railing, first on her left arm, and then back over her valise on her side; that she heard something pop in her side, and that she was so badly hurt that she could hardly get into the coach; that prior to the injury she had done her own washing, and washed for other people, but that since said injury she had neither been able to do her own washing nor the other domestic duties, such as cooking, caring for the house, and the like. She further testified as follows:

"Q. What was the effect of that wound on your stomach? Where is that? A. It was right there (indicating), and whenever I stand on my feet any length of time I have to take an opiate before I can get any ease, the last thing I do, to take an

opiate. I don't walk around home any at all. My husband does most of my work, sweep and help cook mighty near all the time when he is there, and when he isn't there he will cook enough to last until he came back. Q. Are you free from pain and suffering? A. No, sir; I suffer all the time, never get any ease. I haven't had an easy minute since it was done, on the first of December (1903)."

Dr. Covey, on the part of the plaintiff, testified that her left arm was bruised just below the shoulder, and extended down to near the elbow, and on the outer side of the arm was a considerable bruise, blue and somewhat swollen; that the arm was very painful, and that she suffered considerably with it; that it was bandaged from her shoulder down to the elbow, and was kept in the bandage for a month after the injury, probably longer; that the bowels were bruised and blue in places, the muscles and tissues and skin; that she was nervous, and that the entire nervous system, nerve centers, were affected; that she was pregnant at the time of the injury, in about the fifth month of gestation or pregnancy; that she was threatened with a miscarriage, which he attributed to the injury or the condition of the nerve centers; that following the injury, and on account of the injury, a miscarriage was threatened several times, and that he treated her to prevent it; that she suffered more or less pain continually throughout the rest of the time of her gestation, clear up until after her confinement; that her health was extremely bad from the time the accident happened until several months after; that it has never been so good as prior to the accident, is not yet; that the principal trouble she is having now, and has had for some time since, has been with her nervous system; that she has been very nervous; that her nervous system is affected, and she has always suffered more or less pain from her abdomen from the time of her injury up until now. He stated that he had been her physician for four years, and that, taking into consideration his knowledge of her health before the accident happened, and his observation of her health and treatment of her since then, in his opinion she would never entirely recover from the effect of the injury. The testimony on the part of the plain-

tiff in error, in a marked degree, controverted that on the part of the defendants in error.

The court, among other things, charged the jury as follows:

"The plaintiff in her testimony states that she boarded the train of the defendant stopped at that station (Provence) to take on passengers, but that it did not stop a sufficient length of time to allow her a reasonable opportunity to board said train; that before she had a reasonable time to board said train, the train started from said station, causing the alleged accident, from which she claims she sustained the alleged injuries. The court would instruct you that it was the duty of the defendant to stop its train a sufficient length of time to give a passenger boarding said train a reasonable opportunity to do so. You are therefore instructed that, if you are satisfied from a fair preponderance of the evidence in this case that the plaintiff was injured through the alleged carelessness or negligence of the defendant, and without any contributory negligence on her part, your verdict will be a verdict for the plaintiff."

*C. O. Blake, Thos. R. Beman,* and *H. B. Low,* for plaintiff in error.

*Cruce, Cruce & Bleakmore,* for defendants in error.

Williams, C. J. (after stating the facts as above). The plaintiff in error in its motion for a new trial for the first time raises the question that W. N. Burgess, the husband of the herein Myra Burgess, was an improper party plaintiff. Section 4951, Mansf. Dig. Ark. 1884 (Ind. T. Ann. St. 1899, § 3156), extended by act of Congress to the Indian Territory, provides that:

"Where a married woman is a party, her husband must be joined with her, except in the following cases: * * * Second she may maintain an action in her own name for * * * damages against any person or body corporate for any injury to her person, character, or property."

This statute does not appear to have ever been construed by the Supreme Court of the state of Arkansas, or by the United States Court of Appeals for the Indian Territory. It is not necessary, however, for the construction of the same for the proper dis-

position of this case. Section 5028, Mansf. Dig. 1884 (Ind. T. Ann. St. 1899, § 3233), provides:

"The defendant may demur to the complaint where it appears on its face, either: First, that the court has no jurisdiction of the person of the defendant, or the subject-matter of the action; or, second, that the plaintiff has not legal capacity to sue; or, third, that there is another action pending between the same parties for the same cause; or, fourth, that there is a defect of the parties plaintiff or defendant; or fifth, that the complaint does not state facts sufficient to constitute a cause of action."

Assuming that the question of contributory negligence could be raised by demurrer, when it was apparent on the face of plaintiff's complaint—which it is not necessary to determine here—all the defendant's grounds of demurrer come under said subdivision 5. Section 5031, Mansf. Dig. 1884 (section 3236, Ind. T. Ann. St. 1899), provides as follows:

"When any of the matters enumerated in section 5028 (Ind. T. Ann. St. § 3233) do not appear upon the face of the complaint, the objection may be taken by answer. If no such objection is taken, either by demurrer or answer, the defendant shall be deemed to have waived the same, except only the objection to the jurisdiction of the court over the subject-matter of the action, and the objection that the complaint does not state facts sufficient to constitute a cause of action."

Also section 5029, Mansf. Dig. 1884 (Ind. T. Ann. St. 1899, § 3234), provides:

"The demurrer shall distinctly specify the ground of objection to the complaint; unless it does so, it shall be regarded as objecting only that the complaint does not state facts sufficient to constitute a cause of action."

A general demurrer, not raising the question of defect of parties, the same being made a special ground of demurrer by the fourth subdivision of section 5028, of Mansfield's Digest, *supra*, such defect of parties plaintiff neither having been taken advantage of by demurrer nor answer in the *nisi prius* court, cannot be raised on appeal. *Eagle et al. v Beard et al.*, 33 Ark. 501; *Yonley v. Thompson*, 30 Ark. 401; *Molen et ux. v. Orr*, 44 Ark. 488;

*Bevens v. Barnett* (Ark.) 22 S. W. 160; *Clark v. Grambling*, 54 Ark 526, 16 S. W. 475; *Bailey v. Rockafeller*, 57 Ark. 219, 21 S. W. 227; *Long v. De Bevois*, 31 Ark. 480; *Coulson v. Wing*, 42 Kan. 508, 22 Pac. 570, 16 Am. St. Rep. 503; *Seip v. Tilgham*, 23 Kan. 290; *Chicago & Atchison Bridge Co. v. Fowler*, 55 Kan. 17, 39 Pac. 727; *Foster v. Board of County Commissioners*, 63 Kan. 43, 64 Pac. 1037; *Gentry v. Singleton*, 128 Fed. 679, 63 C. C. A. 231; *First National Bank v. Hamor*, 1 C. C. A. 153, 49 Fed. 45, 7 U. S. App. 69.

But if the husband was improperly joined as party plaintiff in an action for damages on account of personal injuries sustained by the wife, under the provisions of sections 5028, 5029, and 5031, Mansf. Dig. Ark. 1884 (Ind. T. Ann. St. 1899, §§ 3233, 3234, ·and 3236), which are practically identical with sections 4293, 4294, and 4295 of Wilson's Rev. & Ann. St. Okla. 1903 (sections 4971, 4972, and 4973, Gen. St. Kan. 1905. sections 89, 90, and 91, Kan. Code Civ. Proc.), it was not a defect of parties plaintiff, but a misjoinder or excess of such parties; and cannot be taken advantage of by demurrer, but by motion. *Little Rock & Ft. Smith Railroad Co. v. Dyer*, 35 Ark. 363; *Oliphint v. Mansfield*, 36 Ark. 191; *Fry v. Street*, 37 Ark. 39.; *Stiles v. City of Guthrie*, 3 Okla. 26, 41 Pac. 383; *Weber v. Dillion*, 7 Okla. 568, 54 Pac. 894; Winfield *Town Co. v. Maris*, 11 Kan. 128; *McKee v. Eaton*, 26 Kan. 226; *White v. Scott*, 26 Kan. 476; *Hurd v. Simpson*, 47 Kan. 372, 27 Pac. 961.

The defendant, not having raised the question of a misjoinder of parties plaintiff in the court below by proper motion, will not now be permitted to maintain such contention in this court. *Booker v. Robbins et al.*, 26 Ark. 660; *Long v. De Bevois*, 31 Ark. 480; *Little Rock & Ft. Smith Railroad Co. v. Dyer*, 35 Ark. 363; *Fry v. Street*, 37 Ark. 39; *Collins v. Lightle*, 50 Ark. 101, 6 S. W. 596; *Railroad Co. v. Amos*, 54 Ark. 163, 15 S. W. 362; *Taylor v. Southerland et al.* (Ind. T.) 104 S. W. 874. This is a wholesome rule. A party desiring to take advantage of a defect of or misjoinder or excess of parties plaintiff, must promptly interpose an

objection in the manner provided by law. Failing so to do, it will not be permitted to speculate upon a favorable verdict, and then, if disappointed by an adverse finding of the jury, be allowed to raise such question, either in its motion for a new trial or in the appellate court. *Little Rock & Ft. Smith Railroad Co. v. Dyer,* 25 Ark. 363; *Coulson v. Wing,* 42 Kan. 508, 22 Pac. 570, 16 Am. St. Rep. 503; *Young v. Stickney,* 46 Or. 104, 79 Pac. 346.

In the case of *Coulson v. Wing,* 42 Kan. 508, 22 Pac. 570, 16 Am. St. Rep. 503, the court held that the question of a defect of parties could not be raised in the introduction of evidence. In the case of *Railway Co. v. Hucklebridge,* 62 Kan. 512, 64 Pac. 58, by a divided court, the Supreme Court of that state held that where the fact of a defect of parties neither appeared from the face of plaintiff's petition nor was it known to the defendant until it was disclosed at the trial on plaintiff's cross-examination, no objection then being made on the ground of a defect of parties plaintiff, but afterwards being first made upon demurrer to plaintiff's evidence, and further raised upon request for instruction, such question was reviewable on appeal. Chief Justice Doster, and Justices Cunningham and Ellis dissented from this holding, Johnson, Smith, Green, and Pollock, supporting the majority opinion. It is not necessary to determine whether we will follow the rule laid down in the case of *Railway Co. v. Hucklebridge, supra,* or that announced in the case of *Coulson v. Wing, supra,* for the reason that this case, as to procedure, is governed by certain general laws of the state of Arkansas as they appear in chapter 54, Mansfield's Digest of the laws of said state, in force at the close of the session of its General Assembly in the year 1883, and, as such laws of the state of Arkansas at the close of the session of the Legislature of 1883 had been construed by the highest court in that state, and were extended as such by act of Congress to the Indian Territory, and were so in force at the time of its admission into the Union as a part of the state of Oklahoma. *Foreman v. Midland Valley Railway Co.* (Ind. T.) 104 S. W. 808; *National Live Stock Co. v. Taliaferro,* 20 Okla. 177, 93 Pac. 985.

In the case of *Little Rock & Ft. Smith Railroad Co. v. Dyer*, *supra*, decided by the Supreme Court of the state of Arkansas at its May term, 1880, Mr. Justice Eakin, speaking for the court, said:

"Misjoinder of parties, however, is not good ground for motion in arrest of judgment. .It may be set up in the answer, or if it appear from the pleadings, may be corrected by motion."

In the case of *Bevins v. Barnett* (Ark.) 22 S. W. 160, the rule laid down in the case of *Little Rock & Ft. Smith Railroad Co. v. Dyer, supra*, is followed and amplified. Mr. Justice Mansfield speaking for the court, said:

"But the plaintiff waived the defect of parties by going to trial without objecting to it, and the court properly refused to permit the objection to be raised by an instruction to the jury."

The case of *Taylor v. Southerland et al.* (Ind. T.) 104 S. W. 874, is a case where an action was brought by D. A. Taylor, appelant, to recover from appellees rents on certain land; wherein he claimed said rent by virtue of being grantee in a certain deed, where the principal landlord of the said appellees as tenants was grantor. The deed when introduced in evidence appeared to have been made jointly to D. A. Taylor and his wife, Vernie Taylor. Thereupon the appellees moved for a peremptory instruction, on the theory that on account of such defect of parties there was a fatal variance. On page 876, Mr. Justice Lawrence, speaking for the court, overruled the objection of appellees in the following language:

"The appellee in his brief gives considerable space to the discussion of the question that appellant cannot recover because of not sufficient parties plaintiff, and because of a variance with the proof. It is too late to raise those points for the first time in this court, for the reason that, if made below, the pleadings could have been amended and the error corrected under the provisions of the statute."

In that case the jury found in favor of the appellees, and, the appellees having moved for a peremptory instruction, it was their contention in the appellate court that the moving for a peremptory

instruction, and saving the point in the motion for a new trial, raised the question in the court below.

The plaintiff in error in its brief urges that the plaintiffs below declared, not only for personal injuries to the wife, but also for the sum of $300, alleged to have been expended for medicine and a physician, for the care and treatment of the plaintiff, Myra Burgess. · It is contended by· plaintiff in error that, so far as the sum of $300 for medicine and treatment of a physician appeared, it could have been a joint action, and for that reason they could neither raise the question of misjoinder of parties by motion nor demurrer. But it was its duty, if it desired to raise such question, to move for plaintiff's complaint to have been made more definite and certain. And then, if it disclosed that there was a joint action for that sum of money so expended, the plaintiff in error, still further desiring to raise the question that the husband was an improper party plaintiff to be joined for the recovery for ·personal injuries to his wife, should have moved to strike out the cause of action for $300, for the reason that two causes of action, wherein the parties plaintiff were not identical, were ·improperly joined, and then to have moved to have stricken out W. N. Burgess as a party plaintiff, on the ground that he was neither a necessary nor a proper party to be joined with his wife for the recovery of personal injuries. No such course having been pursued · on the part of plaintiff in error, neither the question of the improper joining of causes of action nor of misjoinder of parties plaintiff was properly raised to be reviewed in this court. *Ball et al. v. Fulton County,* 31 Ark. 380; *Bushey v. Reynolds,* 31 Ark. 657; *Walker v. Fuller,* 29 Ark. 448; *Salmon v. Mills,* 49 Fed. 333, 1 C. C. A.· 278; sections 5026, 5082, Mansf. Dig Ark. 1884 (sections 3231, 3287; Ind T. Ann. St. 1899); *Riley v. Norman,* 39 Ark. 158; *Terry v. Rosell,* 32 Ark. 478; *Clements v. Lampkin,* 34 Ark. 598; *Dyer v. Jacoway,* 42 Ark. 186; *Lyman v. Corwin,* 27 Ark 582; *Organ v. Railroad Co.,* 51 Ark. 235, 11 S. W. 96; *Burgett v. Allen,* 54 Ark. 560, 16 S. W. 573.

But this would not be the rule of procedure in accordance with

the laws of the territory of Oklahoma now in force in the state of Oklahoma. Section 4296, Wilson's Rev. & Ann. St. Okla. 1903 (section 4974, Gen. St. Kan. 1905; section 92, Kan. Code Civ. Proc.), provides:

"When a demurrer is sustained on the ground of misjoinder of several causes of action, the court on motion of the plaintiff shall allow him, with or without costs, in its discretion, to file several petitions, each including such of said causes of action as might have been joined; and an action shall be docketed for each of said petitions, and the same shall be proceeded with without further service."

Under the rule of procedure in the Indian Territory, prior to its admission into the Union, misjoinder of actions could only be raised by motion. Under the rule of procedure in the territory of Oklahoma prior to such time, which is the rule of procedure now in force in this state, it was proper to raise the question of misjoinder of actions by demurrer. This case is governed by the rule in force in the Indian Territory prior to the admission of the state into the Union.

The next proposition advanced by plaintiff in error is that the court erred in instructing the jury that it was the duty of the defendant to stop its trains at Provence a sufficient length of time, to give a passenger boarding said train a reasonable opportunity to do so. The plaintiff in error overlooks the fact that in its answer it admitted that, by and through its agents, it stopped said train at said town of Provence at said time. In addition to that, the undisputed testimony shows, and the jury by their general verdict so found, that at the time in question the plaintiff in error, through its servants and employes, stopped its passenger train at the station of Provence, before its platform, and that its porter stepped out on said platform and cried, "All aboard," and that the defendant in error Myra Burgess, in a reasonable way and without any negligence on her part, attempted to board said train, and that, on account of the train being started before it had been stopped a reasonable length of time for the passengers to board the same, the

alleged accident, from which the jury found she sustained the injuries, occurred. In the case of *Alabama Midland Railway Co. v. Johnson*, 123 Ala. 201, 26 South. 160, Mr. Justice Tyson, speaking for the court, said:

"It was the duty of the defendant's servants in charge of the train, when it stopped at Ashford for the purpose of discharging and removing passengers to have kept it stationary for a length of time which was reasonably sufficient to enable all passengers to get off and on by the exercise of due care and discretion. *Montgomery & Eufaula Railroad Co. v. Stewart*, 91 Ala. 421, 8 South. 708; *Birmingham Union Railway Co. v. Smith*, 90 Ala. 60, 8 South. 86, 24 Am. St. Rep. 761."

And it is unquestionably "the duty of the servants of a carrier of passengers, especially when in charge of a railroad train, to stop it a reasonable time to allow passengers to board or alight with safety; and, in the absence of contributory negligence on the part of the passengers, the carrier is liable for injuries resulting from a failure to perform this duty." Moore on Carriers, § 38; *Imhoff v. Chicago & Milwaukee Railway Co.*, 20 Wis. 344; *Keller v. Sioux City & St. Paul Railroad Co.*, 27 Minn. 178, 6 N. W. 486; *Southern Railroad Co. v. Kendrick et ux.*, 40 Miss. 387, 90 Am. Dec. 332; *Flint & Pere Marquette Railway Co. v. Stark, Adm'r*, 38 Mich. 715; *Swigert v. Hannibal & St. Joseph Railroad Co.*, 75 Mo. 477; *Johnson v. West Chester & Philadelphia Railroad Co.*, 70 Pa. 365; *Keating v. N. Y. Central & Hudson River Railroad Co.*, 49 N. Y. 673; *Cent. Railroad, & Banking Co. v. Miles*, 88 Ala. 256, 6 South. 697; *Brooks v. Boston & Maine Railroad Co.*, 135 Mass. 21. In view of the admissions of the defendant in its answer that, on the date complained of by the defendants in error, it was operating an engine and cars, constituting a passenger train, between the towns of Provence and Mannsville, and that by and through its agents it stopped said train at said town of Provence on that day, and the undisputed testimony showing that said train, as a passenger train, was stopped at said station of Provence, which was admitted to be a station, and that the porter of said train from the platform called "All aboard," there

can be no contention that the jury were misled by the instructions
of the court relative to the stopping of said train at said station.
For the court, in effect, told the jury that, the plaintiff having stop-
ped its train at said station to take on passengers, and it being
claimed that the train was not stopped a sufficient length of time
to allow Mrs. Burgess a reasonable opportunity to board same, and
that, before she had such reasonable opportunity, the train started
from said station, causing the alleged accident from which she
claimed she sustained the alleged injuries, under such circumstan-
ces it was the duty of the railway company to stop its train a suffi-
cient length of time to give a passenger boarding said train a rea-
sonable opportunity to do so; that if the jury are satisfied from a
fair preponderance of the evidence in the case that the plaintiff,
Mrs. Burgess, was injured through the alleged carelessness or
negligence of the defendant railway company, and without any
contributory negligence on her part, the verdict of the jury should
be for the plaintiff. That was a correct interpretation and expo-
sition of the law relative to the case.

The next question raised is that the verdict cannot be sustain-
ed under all the facts in the case, because the damages assessed are
excessive. The rule established in the Supreme Court of Arkansas
is that a new trial will not be granted on appeal, on the ground of
excessive damages, unless the verdict is so clearly and flagrantly
excessive that the mind at once perceives that the verdict of the
jury is grossly unjust. *Peterson v. Gresham,* 25 Ark. 380. An
appellate court will not necessarily grant a new trial because it is
not satisfied with the amount of the verdict. *L. R. Junction Rail-
way Co. v. Woodruff,* 49 Ark. 381, 5 S. W. 792, 4 Am. St. Rep. 51;
*Bivens v. State,* 11 Ark. 455. The rule is further stated:

"Verdicts assessing damages are set aside, on the ground that
they are excessive, only when not supported by the proof, so as to
become shocking to the sense of justice, or so excessive as to in-
dicate passion or prejudice." (*Tex. & St. Louis Ry. Co. v. Cella,*
42 Ark. 528.)

Subdivision 4 of section 5151, Mansf. Dig. Ark. 1884 (section

3356, Ind T. Ann. St. 1899), providing that a former verdict or decision may be vacated, and a new trial granted on the application of the party aggrieved, when excessive damages, appearing to have been given under the influence of passion or prejudice, are found against such parties, is identically the same as subdivision 4 of section 4493, Wilson's Rev. & Ann. St. Okla. 1903 (section 5202, Gen. St. Kan. 1905; section 306, Kan. Code Civ. Proc.). Under numerous decisions of the Supreme Court of Kansas on appeal to that court, wherever it was evident that the judgment for damages was greatly excessive, or to such an extent as to indicate that it was given under the influence of passion or prejudice, the court never hesitated to reverse such judgment, or in lieu thereof require a *remittitur*. *Swartzell v. Dey,* 3 Kan. 244; *Railway Co. v. Hand,* 7 Kan. 380; *Railway Co. v. Milliken,* 8 Kan. 647; *Railway Co. v. Weaver,* 16 Kan. 456; *Harvester Works v. Cummings,* 26 Kan. 367; *Board v. Kiser,* 26 Kan. 279; *Curtis v. Hoadley,* 29 Kan. 567; *Railway Co. v. Peavy,* 29 Kan. 170, 44 Am. Rep. 630; *Railway Co. v. Peavy,* 34 Kan. 472, 8 Pac. 780; *Railway Co. v. Dwyer,* 36 Kan. 58, 12 Pac. 352; *Bell v. Morse,* 48 Kan. 601, 29 Pac. 1086; *Railway Co. v. Dwelle,* 44 Kan. 410, 24 Pac. 500; *Steinbuchel v. Wright,* 43 Kan. 307, 23 Pac. 560; *Railway Co. v. Com'rs,* 37 Kan. 567, 15 Pac. 499; *Ft. Scott Railway Co. v. Kinney* (Kan. App.) 53 Pac. 880; *Railway Co. v. Richards,* 58 Kan. 344, 49 Pac. 439; *Railway Co. v. Ryan,* 49 Kan. 1, 30 Pac. 108; *Richolson v. Freeman,* 56 Kan. 463, 43 Pac. 772; *Drumm v. Cessnum,* 58 Kan. 331, 49 Pac. 78.

This rule does not militate against any of the prior decisions of this court. In numerous decisions it has held that wherever there was testimony reasonably tending to support the issues presented, the verdict would not be disturbed on appeal; but those decisions were based on subdivision 6 of section 4493, Wilson's Rev. & Ann. St. 1903, *supra,* which provides for a new trial on the grounds that the verdict, report, or decision is not sustained by sufficient evidence, or is contrary to law. In the case of *Chicago,*

*Rock Island & Pacific Railway Co. v. Groves,* 20 Okla. 101, 93 Pac. 758, this court said:

"The question, then arises, when is a verdict contrary to law? Where the evidence on the trial establishes the fact so clearly and indisputably that the court may instruct the jury to bring in a particular verdict, but neglects to do so, and is not requested so to do, and the jury returns a verdict contrary to what the law directs in such a state of facts, then, and then only, can the court set aside the verdict of the jury."

In the case of *Missouri, Kansas & Texas Railway Co. v. Shepherd,* 20 Okla. 626, 95 Pac. 244, this court cited with approval the case of *Gulf, Colorado & Santa Fe Railway Co. v. Ellis,* 54 Fed. 481, 4 C. C. A. 454, wherein Mr. Justice Caldwell, speaking for the court, said:

"If there is any evidence, direct or circumstantial, fairly tending to support the verdict, it must stand. Every presumption is in its favor, and all doubts must be resolved in its favor. This court will not weigh or balance the evidence. And in cases like the one at bar, which turn on the question whether the party exercised ordinary care or was guilty of negligence, after the usual and appropriate definition of those terms by the court, it is the province of the jury to say, from a consideration of the evidence, whether in the particular case ordinary care was exercised, or whether there was negligence. In other words, what is ordinary care or what is negligence in the particular case is a question of fact for the jury, and not of law for the court." (See, also, *Robinson et al. v. Roberts,* 20 Okla. 787, 95 Pac. 246).

The assignment in the motion for a new trial, in such cases, raising that question was under said subdivision 6, and the rule prevailing in this jurisdiction is that, where there is testimony reasonably tending to support the issues upon which a verdict is based, on appeal this court will not disturb the findings of the lower court. *St. Louis & San Francisco Railroad Co. v. Jamison,* 20 Okla. 654, 95 Pac. 417. Although there may have been sufficient testimony to justify a verdict for the plaintiff on appeal, yet if that verdict is for damages, and the record shows that the damages were excessive, appearing to have been given under the influ-

ence of passion or prejudice, it is the duty of the appellate court, under such circumstances, to reverse and remand. *Atchison, Topeka & Santa Fe Railroad Co. v. Dwelle,* 44 Kan. 410, 24 Pac. 500; *Railroad Co. v. Cone,* 37 Kan. 567, 15 Pac. 499; *Steinbuchel v. Wright,* 43 Kan. 307, 23 Pac. 560; *Cassin v. Delaney,* 38 N. Y. 178. In the case of *Missouri Pacific Railway Co. v. Dwyer,* 36 Kan. 74, 12 Pac. 362, Chief Justice Horton, speaking for the court, said:

"In many of the states appellate courts have adopted the practice, where the damages are execessive, but the plaintiff is entitled to something substantial, of indicating the excess, and of giving or directing the trial court to give the plaintiff the option to remit the excess, and allow him to take judgment for the residue. Such action on the part of the appellate court is no invasion of the province of the jury, or of the rights of the defendant. Civ. Code, § 542; *Branch v. Bass,* 5 Sneed (Tenn.) 366; *Baker v. City of Madison,* 62 Wis. 137, 22 N. W. 141, 583; *McIntyre v. Railroad Co.,* 47 Barb (N. Y.) 515; *Murray v. Railroad Co.,* 47 Barb. (N. Y.) 196; s. c. affirmed in 48 N. Y. 655; *Kinsey v. Wallace,* 36 Cal. 462; *Hahn v. Sweazea,* 29 Mo. 199; *Belknap v. Railroad Co.,* 49 N. H. 358; *Collins v. City of Council Bluffs,* 35 Iowa, 432; *Durkes v. Town of Union,* 38 N. J. Law, 21; *Haselmeyer v. McLellan,* 24 La. Ann. 629; *Boyd v. Brown,* 17 Pick. (Mass.) 453; *Watson v. Railroad Co.* (Pa.) 38 Leg. Int. 138."

Section 542 of the Civil Code of Procedure, referred to in the case of *Missouri Pacific Railway Co. v. Dwyer, supra,* is identical with section 556, Oklahoma Code Civ. Proc. (section 4754, Wilson's Rev. & Ann. St. 1903). Section 1313, Mansf. Dig. Ark. 1884 (section 815, Ind T. Ann. St. 1899), is substantially the same as section 542, Kan. Civ. Code Proc.

A new trial will not be granted by the appellate court because it is not entirely satisfied with the amount of the verdict. *L. R. Junction Railway Co. v. Woodruff,* 49 Ark. 381, 5 S. W. 792, 4 Am. St. Rep. 51. In the case of *Bodwell v. Osgood,* 3 Pick. (Mass.) 379, Judge Wild stated:

"We do not doubt our power to grant new trials on the ground of excessive damages in cases of personal torts, and where

they are clearly excessive, and greatly disproportionate to the injury proved, we are bound to interpose, but a strong case must be made out."

In the case of *McNamara v. King,* 7 Ill. 432, the court said:

"In actions for personal injuries courts will not set aside verdicts for excessive damages, unless the damages are so excessive as to make it manifest that the jury acted from passion, partiality, or corruption, and to enable the court to draw this conclusion it is not enough that, in their opinion, the damages are too high, or a much less damage would have been a sufficient satisfaction to the plaintiff."

In the case of *Van Zant v. Jones,* 3 Dana (Ky.) 464, the court said:

"In actions of trespass a new trial will not be granted on the ground of excess of damages, unless they are so excessive as *per se* to indicate passion or prejudice."

In the case of *Worford v. Isbell,* 1 Bibb (Ky.) 247, 4 Am. Dec. 633, the court said:

"In cases sounding merely on damages, without any medium of admeasurement, a court should be cautious in setting aside a verdict purely for excess. If, in such cases, a new trial is granted for such cause, the rule is that the damages must be such as that all men who hear the circumstances would pronounce the damages outrageously excessive at first blush."

In *Edgtell v. Francis,* 1 Man. & G. (English Common Pleas) 222, the court said:

"To induce the court to grant a new trial on the ground of excessive damages, it must be shown that they are very excessive, and that a perverted view of the case has been taken by the jury."

In the case of *Aldrich v. Palmer,* 24 Cal. 516, the court said:

"In actions for personal torts the law does not attempt to fix any precise rules for the admeasurement of damages, but, from the necessity of the case, leaves their assessment to the good sense and unbiased judgment of the jury. Their verdict, as in all other cases, is subject to review by the court, but will never be disturbed unless the amount of the damages is obviously so disproportionate to the injury proved as to justify the conclusion that the verdict is

not the result of the cool and dispassionate consideration of the jury. The leading object of such actions is to obtain reasonable and just compensation for the injury sustained, comprehending both the present and the future. But to ascertain what is a fair and just compensation in such cases is a judicial problem of difficult, if not impossible, solution. None, however, are more competent to its proper solution than the jury. Hence the courts have always sparingly exercised the power of granting new trials in such cases. Where the law furnishes no rule for the measurement of damages, their assessment is peculiarly the province of the jury, and the court will never interfere with their verdict merely on the ground of excess. Upon such a question the court has no right to substitute its opinion for that of the jury, merely because it happens to differ from theirs."

In the case of *Illinois Central Railroad Co. v. Barron,* 72 U. S. 90, 18 L. Ed. 594, Mr. Justice Nelson, speaking for the court, said:

"If the suit is brought by the party, there can be no fixed measure of compensation for the pain and anguish of body and mind, nor for the loss of time and care in business, or the permanent injury to health and body. * * * There being no legal measure of damages for pain and suffering, the amount which a jury may award as compensation for these elements of damages in an action for a personal injury is peculiarly within their discretion. They should exercise a calm and dispassionate judgment, in view of all the facts established by the evidence, under the instructions of the court, supplemented by their knowledge, observation, and experience in the affairs of life, as applicable to the facts and circumstances proven. The parties are entitled to the judgment of the jury, and it not within the province of the court to decide upon the amount of damages."

In the case of *Vicksburg & Meridian Railroad Co. v. Putnam,* 118 U. S. 554, 7 Sup. Ct. 2, 30 L. Ed. 257, Mr. Justice Gray, speaking for the court, said:

"In an action for a personal injury, the plaintiff is entitled to recover compensation, so far as it is susceptible of an estimate in money, for the loss and damage caused to him by the defendant's negligence, including not only expenses incurred for medical attendance, and a reasonable sum for his pain and suffering, but also

a fair recompense for the loss of what he would otherwise have earned in his trade or profession, and has been deprived of earning by the wrongful act of the defendant. *Wade v. Leroy,* 20 How. 34, 15 L. Ed. 813: *Nebraska City v. Campbell,* 2 Black, 590, 17 L. Ed. 271; *Ballou v. Farnum,* 11 Allen (Mass.) 73; *New Jersey Express Co. v. Nichols,* 32 N. J. Law, 166, 33 N. J. Law, 434, 97 Am. Dec. 722: *Philips v. London & Southwestern Railway,* 4 Q. B. D. 406, 5 Q. B. D. 78, and 5 C. P. D. 280; s. c. 49 Law Journal (Q. B.) 233"

The same rule is announced in the case of *South & North Alabama Railroad Co. v. McClendon,* 63 Ala. 266, and to the same effect in *St. Louis, Iron Mountain & Southern Railroad Co. v. Cantrall,* 37 Ark. 519, 40 Am. Rep. 105. In the case of *Johnson v. Tillson,* 36 Iowa, 89, which was a personal injury case, the court laid down the rule that the findings of the jury as to damages must be based upon and controlled by the evidence submitted for their consideration, in arriving at a conclusion as to the amout of the verdict.

For cases similar to the one in this record, where the court held verdicts in excess of the amount rendered by the jury in this case were not excessive, see *Houston & Texas Railway Co. v. Lee,* 69 Tex. 556, 7 S. W. 324: *Texas & Pacific Railway Co. v. Davidson,* 68 Tex. 370, 4 S. W. 636; *Sears et al v. Seattle Consolidated Street Railway Co.* 6 Wash. 227, 33 Pac. 389, 1081; *Hinton v. Cream City Railroad Co.,* 65 Wis. 323, 27 N. W. 147; *Groves v. City of Rochester,* 39 Hun (N. Y.) 6; *Miller v. Boone County,* 95 Iowa, 6, 63 N. W. 352; *Illionis Central Railroad Co. v. Treat,* 75 Ill. App. 328, and *Illinois Central Railroad Co. v. Robinson,* 58 Ill. App. 181.

In this case the party claiming to have sustained damages was a young woman, 25 years of age, a wife and a mother. The testimony on her part tended to show, that without her fault, she sustained serious and permanent injuries that were painful, and that incapacitated her from attending to her own domestic affairs and duties. These injuries, according to such testimony, made her practically an invalid permanently. True, such testimony was

strongly controverted on the part of the defendant; but the jury evidently believed the evidence on the part of the plaintiff, as they found the facts in favor of the plaintiff. It was peculiarly within the province of the jury to weigh the testimony; they saw the witnesses upon the stand; had opportunity to observe them as they testified; frankness, or want of·frankness; knowledge or want of knowledge; opportunity to know, or not to know, the facts; and also the jury saw the injured party. The jury are presumed to be "of good character, of approved integrity, sound judgment, and reasonable information." (Mansf. Dig. Ark. 1884, § 3982 [Ind. T. Ann. St. 1899, § 2662]), and superintending this trial was the presiding judge, a man learned in the law, whose duty it was, imposed by law, to set aside this verdict or reduce its amount if the jury erred from prejudice or other cause, who has approved the same, and added his sanction to the award. The question was one peculiarly proper for the jury to determine; and, although the verdict is large, larger perhaps than any member of this court would, as a juror, have returned, we cannot, for that reason, say that such damages are so excessive as to be the result of bias or prejudice. *Union Pac. Railway Co. v. Young,* 19 Kan. 493.

It does not sufficiently appear that the verdict assessing damages against the plaintiff in error was excessive, and that the same were given under the influence of passion or prejudice. The judgment of the lower court is affirmed.

All the Justices concur.